No. 10,934.

SUCCESSION OF ANN E. AULD, WIFE OF GEORGE GLIDDEN.

A substitution prohibited by our law is the disposition of a donation *inter vivos* or *mortis causa*, which vests the property of the testator in a person named, during the lifetime of such person, who has not the power of alienation, and, at his death, the *same* property is to vest in another person named, but who takes title directly from the testator, but by a title which only springs into existence on the death of the first donee.

APPEAL from the Civil District Court for the Parish of Orleans. *Voorhies, J.*

---

*Rice & Armstrong* and *F. S. Drolla* for Appellants:

1. In all dispositions, *inter vivos* or *mortis causa*, impossible conditions and those

| 44 | 591 |
| 44 | 914 |
| 44 | 591 |
| 45 | 1394 |
| 44 | 591 |
| 52 | 85 |

contrary to law, or morals, are reputed not written. C. C., Art. 1519; McDonough Will Case, 8 An. 249, 259; Young & Egan, 10 An. 415; Beaulieu vs. Ternoir, 5 An. 480; Duplessis vs. Kennedy, 6 La. 246, 247; Fink vs. Fink, 12 An. 320.

2. ! The essence of the prohibited substitution is that the donee, heir or legatee is charged to preserve for and return the[thing donated to a third person. C. C., Art. 1520; Marshall vs. Pearce, 34 An. 558; Anderson vs. Pike, 29 An. 120; Succession of Theurer, 39 An. 510; Barrow vs. Barrow, 38 An. 648; Succession of Ducloslange, 4 Rob. 409; Succession of Yancey, 20 An. 164; Duperris vs. Kennedy, 6 La. 246.

3. The existence of the prohibited condition—i. e., the substitution of *fidei commissum*—is never presumed. Unless the will can not be understood otherwise, it will be maintained. McCluskey vs. Webb, 4 Rob. 204; Hasley vs. Hasley, 25 An. 603; Succession of Cochrane, 29 An. 234.

4. The penalty of nullity leveled against all dispositions "conditioned" on substitutions differs from the penalty leveled against dispositions "conditioned" on *fidei commissa*, in this: that as to the former, the disposition is null with regard to the donee, the heir and the legatee; and that, as to the latter, the *fidei commissum*, unless the essence of the dispositions, is reputed not written. C. C., Arts. 1520, 1519; Beaulieu vs. Ternoir, 5 An. 480, 461; Succession of Foucher, 30 An. 1017; Clague vs. Clague, 13 An. 1; Succession of Stevens, 36 An. 754; Succession of Yancey, 20 An. 164.

5. The usufructuary possesses, "holds," and "holds in trust," under the law, the thing subject to the usufruct. Such a "holding" is not the *fidei commissum* prohibited by law. C. C., Arts. 554, 556, 557, 567, 625; Succession of Law, 31 An. 456; Fisk vs. Fisk, 3 An. 494; Hallen vs. Faure, 15 An. 622.

6. A will is none the less a valid will because it disposes of the usufruct, and not the body of the property.

7. In determining whether and how the body of the property is disposed of by the will, the court will consider all the circumstances tending to show the intention of the testatrix. C. C., Art. 1715.

8. In interpreting a will. the construction in case of doubt will be adopted which will save, rather than that which will kill. C. C , Art. 1713; Succession of Vance, 39 An. 372; Cecile vs. Lacoste, 8 An. 144.

### *Thos. J. Semmes* for Appellees:

1. A penal condition to protect a prohibited disposition in a will is of no effect. 3 Larombiere Oblig., No. 3, p. 3; 23 Merlin Rep., Verb. Peine Test., No. 5, pp. 117-18; 18 Demolombe, Nos. 187 and 285.

2. Where a joint usufruct is established in favor of two or more persons during their lives, and after their death to a third person, such third person can not take until after the death of all the[joint usufructuaries. C. C. 1707; 6 N. S. 247; 10 An. 165; 10 La. 248.

3. The second beneficiary can not take at all unless in being or conceived at the time of the death of the testator. 3 Marcadé, p. 474; 1 Baudy Lacantiniere, No. 1307, p. 784.

4. The legacy of revenues is a sort of usufruct. Baltimore vs. New Orleans, 13 An. 162.

5. When it is clear the testator intended to provide for a class of persons not in being,at his death, and to create a trust for that purpose, the disposition is illegal. Partington's Trust, 3 Giffard, 378; Rachal vs. Rachal, 1 Rob. 115; Succession of Cochrane, 29 An. 235; Succession of Stevens, 36 An. 755.

Succession of Auld.

6. A trust to sell personal property in this State to invest in real estate in a State where such trust is valid is void. Wood vs. Wood, 5 Paige, 602; 1 Redfield on Wills, 409.

The opinion of the court was delivered by

WATKINS, J. Alleging themselves to be the brothers and sole heirs-at-law of the deceased testatrix, who died without ascendants or descendants, Benjamin F. Auld and Hugh Wilson Auld institute this suit for the revocation and anulment of the last will of Ann E. Auld, who died in the city of New Orleans, State of Louisiana, on the 27th of January, 1891, possessed of property of the aggregate value of $50,267.52, which consisted almost exclusively of United States bonds and currency, State and city bonds, stocks of corporations and rights and credits, generally.

Of this, George Glidden, surviving husband of the testatrix, laid claim to some $13,000 or $14,000, as his individual property.

The last will of the testatrix is in olographic form, bearing date "New Orleans, July 1, 1884." It was duly proved and admitted to probate, and the surviving husband, alone, of three persons named in the will as executors, qualified and undertook the administration of the decedent's estate.

The principal averment on which the charge of nullity is grounded is that, "except the appointment of an 'executor' the provisions of the will are null and void, and *substitutions prohibited* by law."

The following is the full text of the will, viz.:

"NEW ORLEANS, July 1, 1884.

" I declare this to be my last will and testament. I wish my money to be invested in ground rents and real estate in the city of Baltimore, State of Maryland. Should I die possessed of *and* good stocks or securities, *that* shall remain until called in (that is if they should be found to be United States securities) ; other stocks, if doubtful, should be sold and the proceeds invested as above mentioned.

" After my means are invested as above directed, I give to my dear husband, George Glidden, of New Orleans, State of Louisiana, one thousand dollars annually out of the income of my estate. The income to be used and divided equally between my nieces of the city of Baltimore, and daughters of my brother, Benjamin F. Auld, to be used for their benefit. At my husband's death the property shall be held in trust by my nieces, and all the income, including that left

38

by my husband, shall enure to their benefit during their lifetime, and at their death to be divided equally between their daughters.

"Should there be any opposition on the part of heirs to this instrument, my husband shall have the whole of the interest during his lifetime, and they to receive the interest only after his death, without the power of disposing of any part thereof. I appoint George Glidden, William A. Gault and Peter M. Peterson my executors.

"ANN GLIDDEN."

For the purposes of precision and careful analysis, we will reproduce the article of the code which prohibits substitutions, viz.:

"Substitutions and *fidei commissa* are and remain prohibited.

"Every disposition by which the donee, the heir or legatee is charged to preserve for, or to return to, a third person, is null, even with regard to the donee, the instituted heir or the legatee," etc. R. C. C. 1520.

In order that the nullity of the will, on the ground that its provisions are prohibited substitutions, be made plainly and clearly to appear, it is essential that language be pointed out which charges an *heir* or *legatee* to preserve an *inheritance* for, or to return an *inheritance* to, some *third person* named in the will. There must plainly and clearly appear to be *named* and *designated* in the testament *two absolute* takers of *one* and the *same* inheritance, to constitute any provision of the will a prohibited substitution within the intent and meaning of the law. Williams vs. Lodge, 38 An. 620.

This view is fully substantiated by the succeeding article of the code, which declares that a disposition by which two persons are designated as takers of the same thing, *alternatively*, is not a prohibited substitution.

For, says the article:

"The disposition by which a *third person* is called to take the gift, the inheritance or the legacy, *in case the donee, the heir, or the legatee does not take it*, shall not be considered a substitution and *shall be valid*." (Our italics.) R. C. C. 1521.

It is equally true that the reprobated disposition must be of *property* of the testator, and not of *income* or *revenue* to subsequently accrue from the *use* of property after the testator's death, and the consequent devolution of *property in esse* upon the beneficiaries under the will. This appears from the succeeding article of the code, which declares that:

"The same,"—i. e., the observation made in the preceding article in reference to the validity of alternative dispositions—"shall be observed as to the disposition inter vivos or mortis causa by which the usufruct is given to one and the naked ownership to another." R. C. C. 1522.

From those three articles, taken and construed together, we have the three following propositions distinctly announced, viz.:

First. There must be named in the will two absolute takers of one and the same inheritance.

Second. A third person may legally be called to take an inheritance in case an heir or legatee does not.

Third. It is permissible for the testator to donate or bequeath the usufruct of the property to one, and the naked ownership to another.

Keeping these three propositions in view, we must determine whether the will of the decedent violates the first, or is compatible with the remaining two; because it can not be compatible with all three of them.

In order to ascertain the compatibility vel non of the will with the first of the foregoing propositions, it may be paraphrased and restated as follows, viz.:

In the first paragraph she declares that her wish is that her money shall be invested in ground rents and real estate in Baltimore, Maryland; and that any good securities of which she may die possessed shall remain until called in, and that all doubtful securities shall be sold and the proceeds thereof likewise invested.

The second paragraph declares that, after her means are invested, her husband is to receive $1000 annually out of the income of her estate; and the remainder of the income is to be equally divided between her nieces of the city of Baltimore and the daughters of her brother, Benjamin F. Auld, to be used for their benefit.

The third paragraph declares that, at her husband's death, the property shall be held in trust by her nieces, to whose benefit all the income shall enure during their lifetime, and at their death, the property shall be divided equally between their daughters.

The fourth paragraph declares that if there shall be any opposition on the part of the heirs to the testament, her husband shall have the whole of the interest during his lifetime, they to receive the interest only after his death without the power of disposing of any part thereof.

It is conspicuously observable that no disposition whatever is made by the testatrix of her *property*, save and except what is contained in the third preceding paragraph, and if that be differently construed, it is quite certain that the testatrix made no disposition of her *property* at all.

Reiterating the foregoing, it is quite clear that the testatrix merely expressed a *wish* that her *money*, in possession at her death, should be invested in Baltimore, and that doubtful securities should be sold and likewise invested.  She then directs in what manner the *income* of investments thus made shall be distributed between her husband and nieces.  Having thus disposed of the *income* during her husband's lifetime, she declares it to be her desire that, after his death, her "*property* shall be held in trust by (her) nieces," and that "*all the income shall* enure to their benefit during their lifetime." And just here the *solitary* doubt arises, and that one is in reference to the phrase "and at their death to be *divided equally between their daughters.*"

Argument is presented to the effect that the words " to be divided equally" refers to the *income* and not to the *property*.  If this be a correct interpretation, then the question arises as to the disposition of the property.

The will declares emphatically that "the property shall be held in trust *by* her nieces." For whom were they directed to hold the property in trust if not for "their daughters?" No one else is mentioned. When was this trust to expire? At the death of the trustees, the testatrix' nieces.

If such be the true construction to be placed upon this paragraph of the will, then the conclusion is irresistible that the words " to be divided equally" referred to the *property*, and not to the income.

They could not have reasonably referred to the *income* for the plain reason that the *immediately* preceding declaration of the will is that "all the *income*, including that left by my husband, shall enure to their benefit"—*i. e.* the nieces' benefit—"during *their lifetime*;" and, conceding it to have been the intention of the testatrix that " at their death " the *property* should " be divided equally between their daughters," it would have been supererogatory and vain for the testatrix to have made any different distribution of the *income* of the property, after it had become irrevocably vested in the donees.

Plaintiff's suit necessarily admits that the will of the testatrix dis-

posed of the property, and that the disposition of the will was neces-
sarily in favor of the daughters of the testatrix' nieces. Otherwise
there could be no prohibited substitution in the will against which
plaintiffs could inveigh.

Conceding this to be true—and it necessarily is—then it seems
to be perfectly clear that there are no two *absolute* takers
of the property as an inheritance, made mention of in the will; be-
cause the nieces by whom the *property* was to be held in trust were
*only* and exclusively entitled to its *income* "during their lifetime."
Death only was to terminate their trust and their right to the in-
come as well. Upon the happening of that event the property, in
fee simple, is to devolve upon the daughters of the testatrix' nieces
in equal and determined portions.

It is equally clear to our minds that this will presents a case
wherein the testatrix unmistakably bequeathed the *usufruct* of her
property to her husband and his nieces, in determined proportions,
and during their respective lifetimes, and, at their death, the naked
ownership to the daughters of those nieces.

In confirmation of what we regard as a necessary implication to be
drawn from the character of this action, we refer to the brief of
plaintiff's counsel, pages 3 and 4, viz.:

"In no part of the will does she pretend to dispose of the *corpus*
of the property; it is always the *income* which is in her mind, and it
is only the income which she bestows on any one.

"So prominent is this feature of the will, the court will notice *she
gives nothing until her money is invested.*

"The language is, ' *After my moneys are invested,* as above directed,
I give to my husband, George Glidden, $1000 annually *out of the in-
come* of my estate. *The balance of the income* to be used and equally
divided between my nieces of the city of Baltimore and daughters of
my brother, Benj. F. Auld, to be used for their benefit.'

"No one was to get a cent until the investments were made. Her
mind was bent on tying up her money by its investment in lands and
ground rents in Baltimore, to be held in trust, so that the income,
and the income alone, could be expended.

"Will this court compel the executor of this estate to invest the
moneys of the deceased in ground rents and real estate in Baltimore
in his own name as trustee, and to hold it as trustee, so that it may
devolve at his death on the nieces of the deceased, as trustees under
her will ?"

It must be observed that counsel starts cut with the statement that "in no part of the will does she (the testatrix) pretend to *dispose* of the *corpus* of the property;" but that statement is answered and refuted by the concluding sentence, in which it is declared that the evident intention of the testatrix was that her means should be invested in real estate in Baltimore by the executor "in his own name as trustee, and to hold it as trustee, so that it may devolve, at *his* death, on the nieces of the deceased, as trustees under the will."

Evidently the trust estate is the property. That the trust was created, necessarily implies that there is some beneficiary. The will distinctly and exclusively deals with and disposes of the *income* of her property up to and inclusive of the date of her nieces' death. It is only after *their* death that their daughters are to participate in the estate, at all; and upon the happening of that event, the daughters of those nieces, and no one else, is entitled to any participation in the estate.

Antecedent to the death of the husband of the testatrix, no trust is created or apparently contemplated. While it is true the will announces the *wish* of the testatrix to be that her *money* shall be invested in Baltimore ground rents and real estate, the duty of making that investment is imposed upon *no one*. The duty was not imposed upon either of the executors named in the will.

At present we are dealing with the testament alone, and must determine its validity by an examination and comparison of all its parts; and our decision must depend upon its ascertained susceptibility of execution *in futuro*. If, then, the moneys of the testatrix shall be invested in Baltimore real estate, according to the terms of the testament, would there be any legal impediment to its further execution? Such investments being made, as contemplated, could the income and property be disposed of in pursuance of the provisions of the will, without violating the prohibition of the statute in regard to prohibited substitutions?

Our investigation has led us to the conclusion that the income and property of the testatrix could be so disposed of validly and legally.

Counsel's argument proceeds upon the hypothesis that the testatrix gave nothing until after her money was invested, and that no one was to get a cent until the investments were made.

Hence, it was necessary that the court *compel the executor* to

make the contemplated investments, and by this means create a trust estate, of which the *executor* should be trustee, until the date of *his* —the executor's—death, in order that the property might devolve on the nieces of the testatrix.

This argument is entirely without any foundation in point of fact, because (1) there is no provision in the will that the executor shall make the investments; (2) it contains no provision to the effect that any one shall continue to be executor so long as he shall live; (3) and no provision that the trust of the nieces shall begin upon the death or expiration of an executor's term of service.

On the contrary, the commencement of the trust of the nieces is fixed at the date of the death of the *husband* of the testatrix, who, as it turned out, was the only one of them who qualified.

The only trust mentioned in the will is that of the nieces. That is not a prohibited substitution, but a naked trust, which does not convey any present or eventual interest in the property to the trustees.

It is fully shown that there were *in esse* at the date of the death of the testatrix both nieces and the daughters of the said nieces, who are beneficiaries under said testament, and who aver and claim that all of the provisions thereof are valid and legal.

On this discussion and statement of facts, the questions of law raised are few and simple.

We think it quite sufficient for us to cite Marshall vs. Pierce, 34 An. 557, as the whole scope of prohibited substitution was gone into therein, and the fullest discussion of the authorities bearing on the question had.

While it is true that the court was not unanimous in its opinion on the particular application of the law of prohibited substitution to the will there under consideration, yet we find the opinions of the judges *pro et con* in perfect agreement as to what is the vital and essential element of *a* prohibited substitution.

For in the opinion of the court it is said: "The simplest test of the substitution prohibited by our law is that it *vests the property in one person * * and at the death of such person vests the same property in another person*, who takes the same *directly* from the testator; but by a title which only springs into existence on the death of the first donee.

" Such a disposition destroys the power of alienation of the property by the first donee, because he is bound to hold it until his death,

in order that the person then called to take the title may take it. At the same time, no power of alienation exists in the second donee during the life of the first, because his title only comes into being at the death of the taker.''

Differing from the majority, only, with reference to what was a proper construction of the will of Joshua Pierce, but not with regard to what was the proper legal definition of a prohibited substitution, the Chief Justice, dissenting, said:

'' To my mind it is apparent that when he bequeathed to his wife his plantation and movable effects, 'to have and to hold during her natural life' he merely intended to give her the *usufruct* of that property,'' etc.

Both opinions proceed, necessarily, upon the idea that the *corpus* of the property was disposed of, and that, in order that such a disposition should come under the nullifying ban of the prohibited substitution of the code, there must be, at least, two absolute takers of the title of the property of the testator—that is to say, that a title vests in one person who is to keep the property during his life, without possessing the power of alienation, and at his death the same property is to vest in another person named.

We are of opinion that the will under consideration, in terms, gave to the nieces of the testatrix named as trustees the *income* of the property, or the usufruct, but not the title. This is a mere naked trust, uncoupled with any interest in the trustee, save that of an usufructuary, which is permitted under our law. Under this view, the will contains no prohibited substitution and is valid.

It is therefore ordered and decreed that the judgment appealed from be annulled and reversed; and it is further ordered and decreed that the demands of the plaintiffs be rejected at their cost in both courts.