(70 South. 483)

No. 21567.

RICE et al. v. KEY et al.

(Nov. 29, 1915. Rehearing Denied Jan. 10, 1916.)

*(Syllabus by the Court.)*

1. WILLS ⊙⟝55 — TESTAMENTARY CAPACITY —PROOF.

A sensible will, entirely written, dated, and signed by the testatrix, is the best answer to an allegation of absence of testamentary capacity.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 137–158, 161; Dec. Dig. ⊙⟝55.]

2. WILLS ⊙⟝618 — CONSTRUCTION — BEQUESTS TO HUSBAND — DONATION OF USUFRUCT.

A bequest by the wife to the husband of her entire property "to use as he may see fit (during) his lifetime" is a donation of the usufruct.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1436; Dec. Dig. ⊙⟝618.]

O'Niell, J., dissents.

Appeal from Sixth Judicial District Court, Parish of Ouachita; Ben C. Dawkins, Judge.

Action by Mrs. Eula W. Rice and husband against P. J. Key, administrator, and others.

From judgment for defendants, plaintiffs appeal. Affirmed.

Andrew A. Gunby, of Monroe, for appellants. Sandel & Clarke, of Monroe, for appellees.

LAND, J. Plaintiff, as one of the two heirs at law of Mrs. Mittie Field Key, wife of Dr. H. Key, both deceased, sued to annul the last will of the said Mrs. Key, reading as follows, to wit:

"January 14, 1897."

"I here with this day will my entire property to my dear husband, Dr. D. H. Key, to use as he may see fit his life-time, at his death I wish Eula Key Williamson to have $50. Also Bertie M. Moore to have $50, the rest to be given to the children of P. J. Key, and his wife, Jessie H. Key, this is my last will."

"[Signed] Mittie Field Key."

On the same day the said Mrs. Key wrote and signed on a separate piece of paper a codicil as follows:

"I also wish my best clothes to be divided between Mrs. Jessie H. Key and Mrs. Willie W. Roberson, my watch and other little jewelry to be given to Blanch Roberson if she is living if not to Louise or Georgie Roberson. Will the one who has charge of our affairs see that my wishes are carried out."

Plaintiff alleges that the will is null and void because it contains a prohibited substitution, and also seeks to annul the will on the ground of the mental incapacity of the testatrix at the time the instrument was executed.

Defendants' exceptions, including the prescription of five years, were overruled, and the case was tried on the merits. There was judgment in favor of the defendants, rejecting all of plaintiff's demands and dismissing her suit. Plaintiff has appealed.

Counsel for plaintiff and appellant states in his brief that the judge a quo "held that the property belonged to Dr. Key in full ownership, and was inherited from him by his heirs." Counsel for defendant comments on the holding of the judge, as follows:

"This conclusion is absolutely inconsistent with the language of the bequest, to use as he

sees fit his lifetime. The court cannot exclude this part of the will. It means something, and the judge a quo erred most egregiously when he held that his ownership was not intended to cease with his life. This was the limit of his ownership as imposed by the testatrix. If the balance of the will is merely the expression of a wish, then Mrs. Key did not dispose of her property after Dr. Key's death, and it goes by inheritance to her heirs, the plaintiff and her sister."

[1, 2] The testatrix had no children. There was a community of property between Mrs. Key and her husband. Both were growing old, and the wife was not in good health. Under these conditions, the wife, apparently without the aid or assistance of any person, undertook to make her last will and testament.

The plaintiff relies on the case of Marshall v. Pearce, 34 La. Ann. 557, in which Bermudez, C. J., dissented. In that case the will contained two dispositions: The first, giving unto the testator's wife a certain plantation, with improvements and movables thereon, "to have and to hold during her natural life;" and the second, "after her death," giving the same land and improvements unto the testator's grandson.

The majority of the court held that the first disposition vested in the wife the ownership of the property during her life, and that the second disposition was null, because it created a prohibited substitution. The decision in that case was based on the language of the bequest, which, in clear and unequivocal terms, vested in the wife the title to the property without conditions or restrictions of any kind during her natural life. The court pointed out that in the Succession of Law, 31 La. Ann. 456, the property was bequeathed to the wife, "to be used, enjoyed and occupied by her, during her natural life," and that similar qualifications of the bequests appear in the wills considered in Succession of Ducloslange, 4 Rob. 409, Succession of Barker, 10 La. Ann. 28, and Fisk v. Fisk, 3 La. Ann. 494.

The court in Marshall v. Pearce overruled Roy v. Latiolas, 5 La. Ann. 552, where the court, consisting of three members, held with hesitation that a bequest for life, without qualifying words, imported an usufruct. Rost, J., dissenting, said: "An estate for life is not an usufruct."

In Marshall v. Pearce, Bermudez, C. J., dissented, holding that the bequest to the wife was of the usufruct.

In Succession of Weller, 107 La. 466, 31 South. 883, the wife bequeathed all her possessions unto the husband, "to be his as long as he lives." The court, after referring to the case of Marshall v. Pearce, supra, said:

"This brings us to the subject of usufruct. The imperfect ownership growing out of the restrictions of the right to a life tenure of property has, as we think, no place in the laws of this state, unless it is to be considered in the light of an usufruct."

The court in its decree treated the husband as usufructuary. This case, in effect, overruled Marshall v. Pearce, and reinstated Roy v. Latiolas, 5 La. Ann. 552. In Succession of Verneuille, 120 La. 605, 45 South. 520, the court held that a bequest to the wife "for her life" was a donation of the usufruct.

The decisions are uniform that where the purpose of a bequest appears to be the enjoyment or use of certain property during the life of the legatee, the court will restrict the disposition to the usufruct. This doctrine is conceded in Marshall v. Pearce, 34 La. Ann. 560, 561. In the instant case, the property was willed to the husband "to use as he may see fit during his lifetime," and that qualification restricted the bequest to the usufruct.

Moreover, the doctrine that a bequest of property for life is, in this state, a donation of the usufruct has been thrice held by this court. The rule of stare decisis is applicable.

It was the manifest intent of the testatrix that at the death of her husband the prop-

erty should pass to the residuary heirs named in the testament.

This suit was filed more than 10 years after the probate of the will. Actions for the nullity or rescission of testaments are prescribed by 5 years. C. C. art. 3542. This prescription cures all defects of form. Succession of Justus, 45 La. Ann. 190, 12 South. 130.

The last ground of attack on the testament is that, at its date:

"Mrs. Mittie Field Key was not of sound mind. For many years prior to her death, and particularly from the summer of 1893, until her death, the said Mrs. Mittie Field Key was mentally incapacitated by the constant and excessive and gradually increasing use of opium, alcohol, and other drugs from making a valid and legal will and last testament." ‿

On January 14, 1897, after making her will, Mrs. Mittie F. Key wrote to "P. J. Key and wife," inclosing a copy of her will, and saying:

"Inclosed you will find a copy of my will. I wish your dear children to have the benefit of whatever may be left at our death. I feel that Dr. Key has been so kind in helping me to save and take care of my niece Eula H. Williamson that I want to aid you in taking care of your children. I hope this will may be carried out just as it is written."

In the same envelope, was sent another letter of the same date, reading, as follows:

"My dearest Sister:

"I know you will be surprised when you receive this letter, but I love you brother Cap and your children dearly and feel that I want to help you do something for them—in God's providence you may have to wait some time, but I know that will be all right with you both. Eula is grown and does not need what little I have; Bertie Moore is well provided for; so I want my dear little nieces and nephews to have what little I have left at our death. Now dear brother and sister take care of these papers, it may do you good some day. Please do not be offended at me offering my little mite to aid you, it is done in the purest love for you and them. I feel that if I was left alone you would give me a home if I should need it. I feel that if I can help you I want to do it. We all have colds I have been sick three weeks with cold, but am some better now, let me hear from you as soon as you receive this letter."

"With best love for all,"

"Your devoted sister, Mittie Field Key."

The testimony of the plaintiff, and one or two of her witnesses, tends to show that Mrs. M. F. Key was addicted to the habitual use of morphine. Another witness for the plaintiff, who was well acquainted with Mrs. Key, testified that her peculiar and hysterical condition at times was due to the use of whisky. A number of witnesses for the defense, who knew Mrs. Key, testified that they had never observed anything abnormal in her actions or conduct at home or abroad.

We gather from the weight of medical testimony that opium addicts, as a general rule, are not considered as mentally unsound, except when deprived of their usual doses of the drug, and that many such persons continue to pursue their usual vocations for years.

We deem it unnecessary to discuss this testimony in detail, as the will and codicil, and the letters of Mrs. Key written on the same day, are evidently the work of a sane woman, disposing of her estate according to the dictates of duty and affection. These letters give intelligent reasons why she did not leave the residue of her estate to the plaintiff and her half-sister. There is nothing in the will "sounding in folly," and the law presumes testamentary capacity.

Judgment affirmed.

O'NIELL, J., dissents, and hands down reasons. See 70 South. 485.