O’NIELL, J.
Mrs. Nanette Lattier Hall, the wife of Albert J. Hall, died in the parish of Bossier, La., on the 3d of March, 1916. She left neither descendant nor ascendant heirs, her only surviving relations being two brothers, Adolph and Bailey Lattier, and the children of her deceased sister, Mrs.'.Josephine Lattier Childers. Her estate consisted of her half interest in certain property belonging to the community of acquits and gains that had existed between her and her surviving husband, and of other property belonging to her separate estate. She left an olographic will, of which the following is a copy, viz:
“Curtis, La., Jan. 24th, 1898.”
“Conscious of the uncertainty of life, I, Mrs. Nannette Hall, born Lattier, wife of Albert J. Hall, of Bossier parish, Louisiana, now in the full possession of all my faculties and in good health, do make this my last will and testament.
“To my beloved husband, Albert J. Hall, I give and bequeath all of the property, real and personal and mixed, of which I die possessed, save that certain forty acres of land, more or less, situated on Stumpy Lake, in the parish of Bossier, being the southeast quarter of the southeast quarter of section seventeen (17), township seventeen, range twelve, called lot twelve in the act of partition between the heirs of Adolph I^attier, which said forty acres I will and bequeath unto my brother Adolph Lattier; with this one exception, I will, devise and bequeath unto my said husband, Albert J. Hall, all of my property as aforesaid. And I here name, nominate and appoint my said husband, Albert J. Hall, to be executor of this my last will and testament without bond and with seizin of my estate.
“Thus wholly written, dated and signed by me, on this the 24th day of January, 1898, at Curtis, Louisiana.
“[Signed] Nanette Lattier Hall.
“But it is my wish and earnest request of my husband, Albert J. Hall, that at his death he must will and return back all of my property left to him by me, to my brothers, Adolph Lat-tier and Bailey Lattier, and my sister’s children (Josephine Lattier Childers) now deceased, to be equally divided among the three.
“[Signed] Nanette Lattier Hall.”
The surviving husband, Albert J. Hall, presented the will for probate. One of the heirs at law, Adolph Lattier, brother of the deceased, filed an opposition to the probate of the will, with a demand that it be decreed null, alleging that the disposition in favor of the surviving husband contained a prohibited substitution, in that the legatee was charged to preserve the estate for, and return it to, the heirs at law named in the will. Judgment was rendered in favor of the executor, dismissing the demand of the opponent, decreeing the will valid and admitting it to probate. The opponent, Adolph Lattier, having obtained an appeal from the judgment, died, and his *863 brother Bailey Lattier, and. the children of his deceased sister, Mrs. Josephine Childers, being the nearest relations and heirs at law of the deceased appellant, became parties hereto as appellants, and are prosecuting this appeal.
[1, 2] The appellee, Albert J. Hall, concedes that it must be presumed that the request written after the first signature of the testatrix, “But it is my wish and earnest request,” etc., was written on the same day on which the will itself was written. His contention is that that condition of the will was merely a precatory suggestion or request of the testatrix, addressed to his conscience, and that it is not binding in law and cannot affect the validity of the bequest of the estate to him.
In the alternative, that is, hi the event the court should hold that the estate was not given to him in full and absolute ownership, that appellee, Albert J. Hall, contends that he should at least have the usufruct of the estate. The appellants contend, in the other alternative, that is, in the event thel court should hold that the will is valid, that the bequest in favor of Albert J. Hall should be held to be a bequest of only the usufruct of the estate. In other words, each party to this appeal, the appellants on the one hand and the appellee on the other, is willing to accept half a loaf rather than that the other should have the whole. They refer to the doctrine announced in a majority opinion of this court in Rice v. Key, 138 La. 483, 70 South. 483, and affirmed in a majority opinion in Succession of McDuffie, 139 La. 910, 72 South. 450, that a bequest of property for life is a donation of the usufruct. All parties to the appeal, however, insist, primarily, that the doctrine stated in the cases cited has no application to the will in contest here; and we agree with them.
This will is either a legal disposition of the entire estate to the surviving husband, in full ownership, with the mere request that he, in turn will the property to the other parties named in the will, or it contains a prohibited substitution or fidei eommissum, and is therefore null and void.
Article 1520 of the Civil Code provides:
“Substitutions and fidei commissa are and remain prohibited. Every disposition by which the donee, the heir or legatee is charged to preserve for or to return a thing to a third person is null, even with regard to the donee, the instituted heir or the legatee.”
Article 1519 of the Civil Code provides that illegal conditions in a disposition, either inter vivos or mortis causa, are reputed or considered as not written.
Although no distinction is made between substitutions and fidei commissa, in the article of the Code prohibiting them, a distinction has been recognized in the jurisprudence of this court. It has been held that, if the donor or testator has conferred upon the do-nee or legatee full and absolute ownership of the property and has directed him, the do-nee or legatee, to transfer the title to another person named in the will, the disposition embodies a fidei eommissum, in which only the direction or charge to the donee or legatee, to convey the title to the third party, is null and is considered or reputed not written ; but that the illegal part of the disposition, being considered or reputed not written, does not render invalid the disposition of the property in full ownership to the original donee or legatee. (Many decisions on that subject, showing that the doctrine has been adhered to quite consistently in our jurisprudence, were reviewed in a recent decision, in the Succession of Reilly, 136 La. 347, 67 South. 27; and the doctrine was affirmed in Succession of Percival, 137 La. 203, 68 South. 409.
The principle stated in those decisions might be expressed as accurately, without departing from the text of article 1520 of the Civil Code, by saying that a disposition that conveys full and absolute ownership of prop *865 erty to the donee or legatee, with a mere request to the donee or legatee to convey it to a third party named in the act of donation or will, is neither a prohibited substitution nor a fidei eonimissum; and that, in that case, the request addressed to the donee or legatee, being reputed or regarded as not written, does not destroy the title conveyed to the original donee or legatee. But if the disposition, a.s disclosed by the language of the act of donation or testament, conveys the property in trust to one person to be by him delivered in full ownership to another, the disposition is a fidei commissum, and is null. In such case, the court cannot, under the pretense of construing the act of donation or testament, eliminate the direction or charge to convey the property to the third party named in the instrument, as if that clause were not written, and give the property in full ownership to the trustee. That would not be an interpretation of the will of the testator, but would be the construction or making of another will, contrary to the intention expressed by the donor or testator. That distinction in the interpretation of wills was defined clearly in the Succession of Franklin, 7 La. Ann. 414; and the doctrine is now firmly established in our jurisprudence.
[3,4] The substitution, prohibited by article 1520 of the Civil Code, is a disposition 'by which the donor or testator attempts to vest the title of the property temporarily in the donee or legatee, with the binding condition that, at his death, the title shall pass to another person named in the act of donation or testament, without any act or volition of the original donee or legatee. The objection to such a disposition is that it would, if permitted, entail the estate conveyed, so that the title could not be alienated during the lifetime of the original donee or legatee, either by him or by the ultimate beneficiary. The object of the law is to prevent the entailment of 'estates or taking them out of commerce. Hence a test of the substitution, prohibited by article 1520 of the Civil Code, is that both the original donee or legatee, called the gravatus, and the person or persons to whom the property is to be delivered at the death of the first recipient, would derive their titles directly from the original donor or testator. That test was adopted and applied in Marshall v. Pearce, 34 La. Ann. 558. It was approved and employed again in Succession of Auld, 44 La. Ann. 591, 10 South. 877, and in Sevier v. Douglas, 44 La. Ann. 611, 10 South. 804; and it was referred to with approval in Benson v. Cozine, 44 La. Ann. 914, 11 South. 459; was quoted and applied again in Succession of Stephens, 45 La. Ann. 964, 13 South. 197; and was applied, in words of similar import, in Re Billis’ Will, 122 La. 543, 47 South. 884, 129 Am. St. Rep. 355. In other words, a testamentary disposition is not a prohibited substitution unless it purports to give to the ultimate beneficiary a right of action to demand from the succession of the first recipient, at the latter’s death, the title held by him, the first recipient, by virtue of the testament. It is true Chief Justice Bermudez and one of the associate justices dissented from the opinion delivered by Mr. Justice Fenner in Marshall v. Pearce, but only from the doctrine that the bequest of a life estate is not the giving of the usufruct during the life of the legatee. The court was unanimous in recognizing, as a test or essential characteristic of the prohibited substitution, that the ultimate beneficiary of the bequest, or the person to whom the property is to be delivered at the death of the first do-nee or legatee, would derive his title directly from the original testator or donor, without any act or volition of the first donee or legatee, called the gravatus. There has been no departure from that doctrine in our jurisprudence. The learned counsel for the appellants contend that the decision in the Succession of McCan, 48 La. Ann. 145, 19 South. 220, is *867 to the contrary, but we do not think so. The testamentary disposition decreed null in that case was a typical substitution. The bequest to five minor children was made subject to the express condition that they should all attain the age of majority, and that, in the event of the death of any of them during minority, the share given to him or her should accrue to the survivors on the same condition. The effect would have been, if the testament had been declared valid, to render the title of the property inalienable during the minority of the youngest of the legatees, and to substitute the will of the testatrix for the law of inheritance as to the succession of any of the legatees who might die during his or her minority.
Applying the foregoing rules to the will in contest in the case before us, our opinion is that it does not contain either a substitution or a fidei commissure. The bequest to Albert J. Hall conveyed full and absolute ownership of the property bequeathed to him, not in trust, nor subject to any binding condition that he should deliver it to some one else, or that the title should pass to some one else named in the will, at the death of Albert J. Hall, without any act or volition on his part. The wish and earnest request of the testatrix that her husband should will and return the property to her brothers and the children of her deceased sister was not declared to be, nor expressed as, a condition on which the property was given to her husband. The use of the terms, “he must will and return,” etc., is perhaps inconsistent with the expression of a wish and earnest request of him; but the word “must” is no more controlling in the sentence in which it is used than if the testatrix had used the word “shall.” It is presumed that the testatrix knew that her brothers and the children of her deceased sister, as her heirs at law, would inherit her estate if she died intestate. She realized that she was depriving them of their right of inheritance of her estate. Hence she made the earnest request of her husband that, at his death, he should will and return the property to those who would have inherited it if she had not made a will. The expression, “it is my wish and earnest request of my husband,” has an unmistakable meaning. It conveys the idea of the testatrix that, having given the property in full ownership to her husband, she could not control its destiny beyond the term of her life. All that she could do, in that respect, was to make an earnest request or appeal to the conscience of her husband to carry out her wish in his disposition of the property which she had given to him in full ownership. And that is what she did.
In our interpretation of this expression, “it is my wish and earnest request of my husband, Albert J. Hall, that, at his death, he must will and return back all of my property left to him by me, to my brothers,” etc., we cannot eliminate or ignore the words, “it is my wish and earnest request of my husband,” and treat the clause as if the testatrix had said, “he must will and return back all of my property left to him by me, to my brothers,” etc. The intention of the testatrix, as disclosed by the language of the entire testament, was to give the property in full and absolute ownership to her husband, and rely upon her appeal to his conscience to carry out her wish and earnest request, as to the disposition which he should make of it at his death. The provisions of our Civil Code, prohibiting substitutions and fidei commissa, do not declare that a mere request or precatory suggestion addressed to the conscience of a legatee, to whom a bequest is made in full and absolute ownership, shall destroy his title. Such precatory suggestions or requests are, by the courts, reputed or regarded as not written; hence they cannot affect the validity of the testament in which they are expressed.
*869 The judgment appealed from is affirmed at the cost of the appellants.
SOMMERVILLE, J., takes no part.