JANVIER, Judge.
On August 16, 1945, Rose Delia Solari, a femme sole, leaving neither ascendants nor descendants, died at her domicile in New Orleans. She left real and personal property and a' last will and testament reading as follows: “I leave all of which I die possessed to my sister, Charlesia Solari Cammack — and at her passing I wish my niece, Marguerite Cammack Brenchley, and my two grandnieces, Marguerite Peggy Brenchley Baldwin and Dorothy Mary Brenchley Gomila, to inherit share and share alike.”
This will was duly probated.
Mrs. Charlesia Solari Cammack, the legatee designated in the will, by rule called on the Inheritance Tax Collector for the Parish of Orleans to fix the inheritance tax. In her petition for this purpose she directed the attention of the Court to the last portion of the will which mentioned Marguerite Cammack Brenchley, Marguerite Peggy Brenchley Baldwin and Dorothy Mary Brenchley Gomila, and averred that “said provision of said will was precatory only and * * * that it grants no present or future vested right” in any of the said persons.
In this rule to fix the inheritance tax, though Mrs. Charlesia Solari Cammack alone was designated as the petitioner, there are attached to the petition affidavits by the other persons designated, in which they too state that all of the allegations of the petition are correct; in other words, that no one of them has or claims any present or future vested right in the estate of the decedent.
The inheritance tax was fixed on this rule and later judgment was rendered sending Mrs. Charlesia Solari Cammack into possession of the estate. Among the assets was a portion of real estate described as follows: One (1) certain lot of ground, in the Parish of Jefferson, State of Louisiana, in Metairie Heights Subdivision, designated as Lot. No. 112, on a certain plat *349 drawn by Waters and Daniels, Surveyors, annexed to an Act of Deposit before Gustaf R. Westfeldt, Jr., Notary" Public, in -the City of New Orleans, under date of May 26th, 1913, according to which plat Lot No. 112 measures twenty-five feet in width by one hundred and twenty feet in depth, between parallel lines. Acquired C.O.B. 49, folio 679.
On July 27, 1946, the above described property was sold by Mrs. Charlesia Solari Cammack, who had been married to and divorced from N. Emile Baumgardun, to Albert J. Heikamp for $350.
On February 17, 1949, Heikamp brought this suit against his vendor, Mrs. Charlesia Solari Cammack, and Mrs. Marguerite Cammack Brenchley, Mrs. Marguerite Brenchley 'Baldwin and Mrs. Dorothy Mary Brenchley Gomila, and prayed also that all of the legal heirs of Rose Delia Solari be cited through an attorney to represent absent heirs.
It may be noted here that we do not see that Mrs. Brenchley was actually made a defendant in this petition though she, with the other persons named in the will, later appeared and filed answer as a defendant.
In his petition Heikamp averred that, having desired to erect a domicile on the property above described, he had applied to two title guaranty companies for a title guaranty, and that he could not obtain such guaranty unless and until he could secure “a judicial interpretation of the will taken controversially with the legal heirs in accordance with established procedure. The said decision, of course, being to the effect that this was purely a precatory condition.”
He, therefore, prayed that all said heirs, as well as the persons named in the will, be cited and that there be a declaratory judgment “declaring the last will and testament to be good and valid, and, therefore, a confirmation of title and ownership of the said Albert J. Heikamp, of and unto the hereinabove described property *
John A. Solari, Jr. and Mrs. Mary Martha Grote answered plaintiff’s petition, denying the validity of the will and praying that the suit for confirmation of title be dismissed. All of the other persons, who apparently might have inherited had there been no will, intervened and joined with Heikamp in praying that there be a declaratory judgment upholding the validity of the will and declaring that the property in question had been inherited in full and complete ownership by Mrs. Charlesia Sol-ari Cammack, and that that portion of the will which mentioned Mrs. Marguerite Cammack Brenchley, Mrs. Marguerite Brenchley Baldwin and Mrs. Dorothy Brenchley Gomila be declared purely preca-tory.
There was judgment as prayed for in favor of plaintiff, Albert J. Heikamp, and as prayed for by the intervenors, and against John A. Solari, Jr. and Mrs. Mary Martha Grote. The two- last named persons appealed to the Supreme Court. That Court transferred the appeal to this Court, holding that the amount in dispute is the value of the property sold, and that the fact that, as a possible incident of the determination of the issue which is presented, the entire estate may be involved does not vest jurisdiction in the Supreme Court. See Succession of Solari, 218 La. 671, 50 So.2d 801.
After the appeal was lodged in this Court, Mrs. Charlesia Solari Cammack died, and Mrs. Marguerite Cammack Brenchley, Mrs. Dorothy Mary Brenchley Gomila and Mrs. Marguerite Peggy Brenchley Baldwin, were sent into possession as universal legatees and sole testamentary heirs of the deceased, Mrs. Charlesia Solari Cammack, and, on motion, have been substituted as parties appellee in place of Mrs. Charlesia Solari Cammack.
The issue which is involved is readily understood, if not so easily determined. The plaintiff and the intervenors maintain that the will is valid and that the second portion thereof should be construed as merely precatory and, in the alternative, they assert that at worst the will contains merely a vulgar substitution, that is, at worst it should be construed as providing *350 that should the first named legatee die before the testatrix, then the property should be inherited by the persons last named. John A. Solari, Jr. and Mrs. Mary Martha Grote maintain that the will is a nullity for the reason that it contains a prohibited substitution, and that, properly interpreted, it evidences an attempt by the testatrix to leave the full ownership of the estate first to Mrs. Cammack and, at her death, to the other persons named.
If the will should be interpreted as an attempt by the testatrix to give the property in full ownership to the first named legatee for life and then to give it to the three other persons named in the second portion of the will, then it is a prohibited substitution and must fall. *
“Substitutions and fidei commissa abrogated. — Substitutions and fidei commissa are and remain prohibited.
“Every disposition by which the donee, the heir, or legatee is charged to preserve for or to return a thing to a third person is null, even with regard to the donee, the instituted heir or the legatee.” C.C. art. 1520.
“The essential elements of the prohibited substitution are that the immadiate donee is obliged to keep the title of the legacy inalienable during his lifetime, to be transmitted at his death to a third person designated- by the original donor or testator.” Succession of Reilly, 136 La. 347, 67 So. 27, 32.
“The simplest test of the substitution prohibited by our law is that it vests the property in one person, at the death of the donor, (in case of testaments) and, at the death of such person, vests the same property in another person, who takes the same directly from the testator, but by a title which only springs into existence on the death of the first donee.” Marshall v. Pearce, 34 La.Ann. 557.
If, on the other hand, the will should be Interpreted as giving the property to the legatee in full ownership with the expression of the hope that the legatee would bequeath it at her death to the other three persons named in the second portion of the will, then the will is perfectly valid. Jacob v. Macon, 20 La.Ann. 162; Dufour v. Deresheid, 110 La. 344, 34 So. 469; Succession of Hall, 141 La. 860, 75 So. 802.
Counsel for the appellants call attention to the Succession of Ledbetter, 147 La. 771, 85 So. 908, and point to the fact that the will which was there involved contained the word “wish” and that the will in that case was annulled, and they say that no1 distinction can be found between the facts of that case and the facts of this.
It is very evident that there was not involved in the Succession of Ledbetter the question of the interpretation of the will and that there was involved only the question of the legal effect of certain clauses, the interpretation of which the Court ap-‘ parently found perfectly clear.
■In that case the testator, after an initial bequest, made four other dispositions in each of which he used the word “wish”. The Supreme Court in its opinion did not even mention or discuss the question of whether these clauses were dispositive or merely precatory, but, assuming from the entire will that they were intended to be dispositive, discussed the legal effect which should be given them.
Prior to that decision it had been held that a disposition of property to one legatee with a provision that at the death of that legatee it should go-to another designated legatee should be interpreted as giving to the first legatee merely the usufruct for life and as an immediate giving of the naked ownership to the second legatee. The will in the Ledbetter case was attacked, not on the ground that it involved a prohibited substitution, but on the ground that since it should be construed as giving to the plaintiff, a forced heir, only the usu-fruct of certain property, it would deprive him of his legitimate portion of the estate as a forced heir. The Supreme Court held that there was error in the earlier jurisprudence, and that such a disposition to one for life and then to another was, in fact, a prohibited substitution. In other words, the Court held that if a testator leaves property to one legatee for life to- go- to another at the death of the first, such a provision is a prohibited substitution and is not a be *351 quest of the usufruct to one and the naked ownership to another.
Counsel for the appellants insist that an examination of the record in the Succession of Ledbetter will show that, although the Supreme Court did not discuss the question of the interpretation to be placed upon the use of the word “wish”, the question was actually presented.
We have carefully examined that record and particularly the opinions of the district judge who passed upon the exception of no cause of action and of the district judge who decided the case on its merits, and we do not agree that that question was actually presented or considered by either of those district judges. But whether they did or did not consider that question, it is very evident that the .Supreme Court did not, and considered that the only question at issue was the effect of the will and not its interpretation. And all that the Supreme Court decided in the Ledbetter case was that the earlier jurisprudence, culminating in the Succession of McDuffie, 139 La. 910, 72 So. 450, should be overruled.
In the Ledbetter case, the Supreme Court having discussed the Succession of McDuffie, said: [147 La. 771, 85 So. 911,] “Being therefore compelled now tO' elect whether to correct or perpetuate the error of the doctrine announced in Rice v. Key [138 La. 483, 70 So. 483] and repeated in Succession of McDuffie, we now correct the error, and overrule those decisions in so far as they hold that the giving of property to one person during his life and at his death to another is the giving of the usu-fruct to one and the naked ownership of the property to the other legatee.”
It is our opinion that neither the Ledbetter case nor any other case has laid down, or could lay down, a fixed rule that the word “wish” should always, be interpreted as disposing of property, or, on the other hand, that it should always be interpreted as precatory. The entire context of every will must be taken into consideration and from the whole document it must be determined whether the expression of the wish was intended to be merely precatory or was intended by the testator to actually dispose of the property.
As the Supreme Court said in the per curiam in Succession of Fertel, 208 La. 614, at page 648, 23 So.2d 234, 245: “ * * In deciding, in any given case, whether a legacy of this kind is violative of article 1520 of the Code, the only question is whether the intention of the testator as expressed in his will was to give the usu-fruct of the property to one person and the ownership to another, as permitted by article 1522 of the Civil Code. Each case is governed by the wording of the testament. :{; ‡ i*t >i
The Court, in its original opinion in that case, 208 La. at page 626, 23 So.2d at page 238, had already said: “It is evident from a reading of the will that it was written by the testatrix without the aid of counsel. The law is indulgent in all such cases. It exempts language from technical restraint and obeys the clear intention however informally conveyed. If obscured by conflicting expressions, it seeks the intention in a purpose, consistent and rational, rather than the reverse; and, of two interpretations, it selects that which saves from total intestacy. The testator’s intention is his will. This is the first rule of interpretation, to which all others are reduced. The intention must be enforced as far as it can be done legally. * * * ”
Ther-e are several decisions in which our Supreme Court held expressions somewhat similar to that used here to be precatory; for instance, in Jacobs v. Macon, supra, the will read: “I give and bequeath to my wife the further sum of ten thousand dollars, which I desire her to use for the benefit of her brothers and sisters * *
In Succession of Hall, supra, the following is quoted from the will [141 La. 860, 75 So. 802] : “But it is my wish and earnest request of my husband * * * that at his death he must will and return back all of my property * * * to my brothers * * *.”
In Dufour v. Deresheid, supra [110 La. 344, 34 So. 469], the testator used the following language: “At the death of my *352 wife, I desire that, * * * the balance of what she will leave on the day of her decease shall be divided equally between my natural heirs and her own.”
Counsel for appellants, however, insist that since the word used in the Led-better case was "wish” and since the Court held that the expression used indicated an intention to convey title, we must hold that where the word “wish” is used, as it was in this case, the intention of the testatrix must be construed as it was in the Ledbetter case. The distinction between the will there and the will which is before us is readily noticeable, as was said by our Brother of the district court who- rendered the decision from which this appeal was taken. We agree with his views on the entire matter, but we are so much impressed with the logic employed by him in his opinion on this question of interpretation that we now quote from it as follows:
“After a careful examination of the will as a whole of the testatrix, Rose Delia Solari, it is my opinion that it is valid. The first provision in the will — -T leave all of which I die possessed * * * ’ — is obviously dispositive and constitutes a bequest of all the testatrix’s property. However, the remainder of the will — T wish my niece * * * and my two grand-nieces * * to inherit share and share alike’- — merely expresses the desire of the decedent that the named parties would inherit from the universal legatee and is addressed merely to the conscience of the legatee. That this is the intention of the testatrix is evidenced by the testatrix’s change from the use of the verb ‘leave’ to the use of the verb ‘wish’. It must be presumed, of course, that there was a reason for the use of the different verbs, and in my opinion the reason was that the second verb was intended as a statement of a precatory request only. Furthermore, the will does not state a request that the nieces ‘get’ the property or that it should ‘go’ to them, but that they should ‘inherit’ it.
“While it is true that the Supreme Court, in Succession of Ledbetter, 147 La. 771, 85 So. 908, held that a provision very similar to this one created a prohibited substitution, that case is readily distinguishable from the case at bar. The possibility that the word ‘wish’ might render a provision precatory is not even discussed in the Led-better case. Moreover, in the will in the Ledbetter case the word ‘wish’ was used several times by the testator in provisions which clearly were legacies and not mere precatory statements. In such a case, the context in which the word was used would necessitate a finding that it was intended as mandatory, for it would be inconsistent to hold that the use of the word ‘wish’ in one sentence constituted a bequest but in the next a mere request or precatory statement.
“The situation here, however, is quite different. In the only real bequest, the testatrix uses the words T leave’, not ‘I wish’. Thus, when she uses the verb ‘wish’ it is 'perfectly reasonable to interpret the provision as a mere precatory statement, not a bequest.
“The law is well settled that there exists a very strong presumption in favor of the validity of a will and that, where a will is subject to two reasonable interpretations, the law requires the adoption of that interpretation which renders the will valid rather than that which invalidates it.
“Article 1713 of the Civil Code has stated the rule: ‘A disposition must be understood in the sense in which it can have effect, rather than that in which it can have none.’
“The last will and testament of the decedent in my opinion does not contain a prohibited substitution and is, therefore, good and valid.”
In view of the conclusion which we have reached, we deem it unnecessary to consider or discuss the alternative contention of the plaintiff and the intervenors concerning the possibility that the will might be interpreted as containing merely a vulgar substitution.
Since this is a petition for a declaratory judgment we are authorized to “make such award of costs as may seem equitable and just”, LSA-R.S. 13:4240. Under the circumstances we think that *353 the costs of the district court should be borne by the plaintiff, Albert J. Heikamp, and Mrs. Brenchley, Mrs. Baldwin and Mrs. Gomila, and that the costs of appeal should be borne by appellants.
For the reasons assigned the judgment appealed from is affirmed; costs of the district court to be b'orne by Albert J. Heikamp, Mrs. Marguerite Cammack Brenchley, Mrs. Marguerite Peggy Brench-ley Baldwin and Mrs. Dorothy Mary Brenchley Gomila; costs of appeal to be borne by John A. Solari, Jr. and Mrs. Mary Martha Grote.
Affirmed.