PRICE, Judge.
This appeal is taken from a judgment by the district court ordering execution of two olographic wills, both dated November S, 1968, one of which the appellant asserts is invalid.
At the time of her death on December 7, 1969, Mildred Jarrell Barnett had written, dated and signed in her own handwriting four olographic testaments; the first was dated August 1, 1967, the second August 1, 1968, and the last two were both dated November 5, 1968. Each of these wills has been probated and ordered recorded and executed in accordance with law.
Daniel M. Moore, III, great nephew of the testatrix, brought suit throught his tutor and father, Daniel M. Moore, Jr., opposing the filing of one of the testaments dated November 5, 1968, which, in addition to the particular legatees in each of the other wills, named “Cicero and Lewis” (nephews of decedent) legatees under a universal title to receive the residue of her estate. If this will should be set aside, the petitioner, as a collateral heir, will be entitled to inherit a part of this remainder. Should the testament be upheld, he will be entitled to nothing since collaterals are not forced heirs, and therefore may be totally excluded from a succession by adverse testamentary disposition of the entire estate.
Moore contends the will naming residuary legatees, in which the date appears on the back side of the page, is invalid as to form as it is not properly dated in accordance with the provisions of Article 1588 of the La.Civil Code. He further contends the language used in the residuary bequest is indefinite and merely a precatory suggestion, evidencing no animus testandi on the part of the testatrix.
From a judgment of the district court ordering the execution of the two wills dated November 5, 1968, Moore perfected this appeal. He contends the district court erred in reaching the following conclusions: (1) that the testament dated in the middle of its reverse side is valid; (2) that the phrase “ * * * if after everything is paid divide what’s left with Cicero and Lewis * * * ” is a valid bequest; (3) that both wills dated November 5, 1968 are valid; and (4) that appellant is to pay costs of this appeal.
Specification of error 1. The will which constitutes the subject of controversy was written on a single six-inch by ten-inch sheet of paper, on the front of which the testatrix set forth the dispositive portion followed by her signature at the extreme bottom of the page. On the reverse of this sheet, roughly three inches from the top border and in the left half of the page, was the following notation in the handwriting of the testatrix:
“My will written on the 5th day of Nov 1968 Columbia, La.”
Since the front side of the page was undated, the issue before us is whether the date thus supplied satisfies the formal requisites for an olographic testament as stated in La.Civil Code art. 1588:
“The olographic testament is that which is written by the testator himself.
*420 “In order to be valid, it must be entirely written, dated and signed by the hand of the testator. It is subject to no other form, and may be made anywhere, even out of the State.”
In resolving this issue, we must adhere to the rules and policies set forth by the Supreme Court in Succession of Thibodeaux, 238 La. 791, 116 So.2d 525, 530 (1959):
“The policy of our law is to maintain the validity of a will, if possible. LeBleu v. Manning, 225 La. 1087, 74 So.2d 384. If possible, a will should be read so as to lead to a testacy, not to an intestacy. Succession of LaBarre, 179 La. 45, 153 So. 15; Carr v. Hart, 220 La. 833, 57 So.2d 739; Succession of Bechtel, La.App., 99 So.2d 495. However, even though it is the policy of our law to countenance and vindicate the wishes of deceased persons, in so doing we equally recognize that the legal formalities in the drawing up of wills must be scrupulously observed in all essential respects and with substantial precision. Stephens v. Adger, 227 La. 387, 79 So.2d 491; Succession of Bechtel, supra; Soileau v. Ortego, 189 La. 713, 180 So. 496; Succession of Koerkel, 226 La. 560, 76 So.2d 730.”
The date of an olographic testament need not precede the signature thereto. Succession of Fuqua, 27 La.Ann. 271, 273 (1875). The court in Succession of Marshall, 126 So.2d 698-700 (La.App. 4th Cir. 1961) observed:
“It is immaterial in what part of a will the date appears. It can be dated at the head, at the foot, in the body, or even after the signature.” See also Jones v. Kyle, 168 La. 728, 123 So. 306 (1929).
Appellant asserts the date in this case is not “at the head, at the foot, in the body, or even after the signature,” but is on the reverse side of the sheet separate from the dispositive portion, and thus does not constitute a part of the testament.
Courts in the past have recognized that 'olographic testaments may be written on several sheets of paper or on both sides of one sheet of paper. However, we have been unable to find a case in which only the date has been placed on the reverse side of a page containing the dispositive provisions and the signature. In any mul-ti-page testament, where a continuation is made, whether on a new sheet or the back side of one already filled with writing, each of the pages used constitutes a part of the face or body of the will.
In the testament presently before us, the testatrix filled the front side with writing, and was forced to crowd her signature at the bottom of the page. While it is true that approximately one-half inch of space remained at the top of the testament, and about the same amount existed in the left margin, we feel the natural tendency of a writer when' he exhausts the space at the bottom of the page would be to resume either on a new sheet of paper or on the reverse side of the page on which he had been writing. In this case, the latter was done.
Appellant points out that the testatrix did not follow the same pattern of placement of the date and signature at the end of the will as done in the other three testaments written by her, and argues it could be assumed she meant for the date on the reverse side to be in reference to the other testament also dated November 5, 1968.
For these reasons, appellant analogizes this case to the Succession of Bechtel, 99 So.2d 495 (Orl., La.App.1958), in which the court declared that where the deceased by an unsigned document entirely in her own handwriting disposed of her estate, and on a smaller but similar piece of paper enclosed in the same envelope stated that the enclosed was her will and affixed her signature, the two documents together could not constitute a valid olographic will.
We do not feel that the facts of the Bechtel case are sufficiently similar to those involved herein to consider it a precedent.
*421 It is admitted that the entire document, including the date on the reverse side, is in the handwriting of the testatrix and that her signature thereon is genuine. Since this testament is formally sufficient in that it was entirely written, dated and signed by the hand of the testatrix, we concur with the district court’s conclusion that this will dated November 5, 1968, meets the requirements of Article 1588 for an olographic will.
Specification of error 2. The appellant contends the lower court erred in upholding the validity of the phrase “ * * * if after everything is paid divide what’s left with Cicero and Lewis * * * ” as this purported residuary bequest is indefinite and precatory.
We find this contention to be without merit. La.Civil Code art. 1712 directs us to ascertain the intention of the testatrix, and article 1713 commands us to construe the bequest in such a way to give it effect, if possible. Girven v. Miller, 219 La. 252, 52 So.2d 843 (1951).
We note the pronouncement by the court in Succession of Fertel, 208 La. 614, 626, 23 So.2d 234, 238 (1945):
“It is evident from a reading of the will that it was written by the testatrix without the aid of counsel. The law is indulgent in all such cases. It exempts language from technical restraint and obeys the clear intention however informally conveyed. If obscured by conflicting expressions, it seeks the intention in a purpose, consistent and rational, rather than the reverse; and, of two interpretations, it selects that which saves from total intestacy. The testator’s intention is his will. This is the first rule of interpretation, to which all others are reduced. The intention must be enforced as far as it can be done legally.
“When a will is executed, a reasonable and natural presumption is that the testator intends to dispose of his entire estate. There is no presumption that he intends to die intestate as to any part of his estate when the language he uses will clearly carry the whole.” See also Heikamp v. Solari, 54 So.2d 347, 351 (1951).
The phraseology used by the decedent leaves no doubt in our minds as to her intent. She has not merely suggested through the use of such terms as “wish” or “request”, but has clearly expressed her intention to leave the residuum to Cicero and Lewis.
A review of the decisions cited by appellant in support of his argument reveals no basis for concluding the plain and unambiguous language used in the case presently before us was suggestive rather than dis-positive. In Succession of Hall, 141 La. 860, 75 So. 802 (1917), the Supreme Court avoided invalidating a will due to a prohibited substitution by finding the language “ * * * it is my wish and earnest request of my husband, * * * ” to be prec-atory. The court in Girven v. Miller, supra, disposed of charges that an olographic testament was invalid due to a prohibited substitution and language requiring reference to another document not in olographic form by holding that the clause * * * “to be disposed and administered according to my typed instructions” * * * following a universal legacy was a precatory suggestion addressed to the conscience of the legatee. In Heikamp v. Solari, supra, the court again avoided nullifying a will due to a prohibited substitution following a universal legacy by declaring that the language qualifying the universal bequest merely expressed the desire of the decedent addressed to the conscience of the legatee. In this case, the objectionable clause contained the language “ * * * I wish * * * ” The testator in Succession of Kamlade, 232 La. 275, 94 So.2d 257 (1957), left one-half of his estate to his “cousins” on his mother’s side of the family, and the remaining one-half to his “cousins” from his father’s side of the family. The court held that the term “cousins” denotes an unlimited number of persons, and is thus ambiguous and uncer *422 tain, resulting in the invalidity of the testament.
Thus, with the exception of Succession of Kamlade in which there was a clearly ambiguous term, the courts in the above cited cases interpreted the language in the respective wills in order to uphold testacy wherever possible by avoiding objectionable clauses which would otherwise invalidate the testaments and prevent carrying out the expressed intentions of the testators. Such an interpretative approach is clearly prescribed by- La.Civil Code articles 1712, 1713.
Here, the appellant would have us strain to invalidate a will in which we can perceive no ambiguity, and which suffers from no apparent unlawful conditions. We are referred to no authority, nor are we aware of any, which justifies an approach so inconsistent with the clear dictates of the La.Civil Code. Accordingly, we find the bequest “ * * * if after everything is paid divide what’s left with Cicero and Lewis * * * ” to be valid.
Specification of error 3. Appellant complains that the trial judge improperly held that the two wills were valid last testaments of the decedent in that they contain inconsistent particular legacies that indicate the testatrix intended to revoke any prior wills. Since it cannot be determined which of the two instruments bearing the same date was written last, then both should be held invalid.
Appellant also urges that the conclusion of the trial court that the distribution to special legatees be made in accordance with the more beneficial bequest to each legatee found in either will is in error and that the execution of these bequests in this manner will be impossible as the more beneficial bequest for one legatee will reduce the bequest to other legatees.
We shall first point out that none of the legatees has appealed nor answered appellant’s appeal asking for any modification of the judgment appealed from.
Appellant appeals solely from the judgment of the court dated August 26, 1970, upholding the validity of the two wills dated November S, 1968. In the event the will of this date naming residuary legatees is declared valid, then he has no further rights to be adjudicated in this action. The correctness vel non of the trial court’s judgment as it affects rights of the various legatees who are recipients under the several wills left by the decedent and who are not before this court, is not necessary for us to decide at this time.
Neither of the two testaments dated November 5, 1968 contained a revocato-ry clause. We find nothing inconsistent with the disposition naming residuary legatees in one testament with any dispositions contained in the other will of the same date. La.Civil Code article 1693 provides as follows:
“Posterior testaments, which do not, in an express manner, revoke the prior ones, annul in the latter only such of the dispositions therein contained as are incompatible with the new ones, or contrary to them, or entirely different.”
We therefore conclude that the trial court was correct in refusing to invalidate these two testaments for the reasons advanced by appellant.
Specification of error 4. The lower court assessed costs of this proceeding against the appellant, who contends that, since the resolution of these issues was essential in the settlement of the estate, the costs should be taxed against the mass of the succession under the authority of Louisiana Code of Civil Procedure article 2825.
This article provides:
“In all succession proceedings conducted ex parte, the court costs are to be paid from the mass of the succession. In all contradictory succession proceedings, the court costs are to be paid by the party cast, unless the court directs otherwise.”
*423 Appellant is not entitled to escape payment of the costs of his suit under the above article. Expenses, including attorney’s fees, incurred in representing a claimant in succession proceedings are not proper charges against the succession. Succession of Bradford, 130 So.2d 702 (La.App. 2d Cir. 1961); Succession of Meier, 204 So.2d 793 (La.App. 4th Cir. 1967).
For the aforementioned reasons, the judgment appealed from is affirmed, with costs to be paid by appellant.