Succession of Theurer.

## No. 9554.

## SUCCESSION OF R. F. THEURER.

ON PETITION FOR NULLITY OF WILL.—OPPOSITION TO ACCOUNT, ETC.

Abstracts of inventories recorded to preserve the mortgage of minors are not evidence of the validity of the minor's claim, much less are they conclusive against the tutor as to the amount appearing on them to be due the minor.

And as the general mortgage created by recording these abstracts is not fixed in amount by such recording merely, so a special mortgage on a particular piece of property, executed under permission of the court to replace that general mortgage, does not irrevocably fix the sum stated therein as the sum secured to be the sum due the minor.

And hence it follows that where a special mortgage has been given by a natural tutor to se cure to his son and ward the one-half of the community property as it appears on the inventory without deduction of the community debts, and in subsequent proceedings in settlement of the succession it is claimed that the sum secured in the mortgage is re ducible by the debts that have been paid, evidence of such payment and of the condi tion of the succession when it fell to the heir is admissible in order to ascertain what was the actual value of the succession at that time.

This does not abrade the general doctrine that protects the sanctity of judicial declarations and authentic acts. These acts of a tutor are required to be done in certain contin gencies to accomplish certain purposes, and the law that required the performance of them fixes their meaning and limits their effect and consequence.

In the interpretation of wills the principal aim must be to discover the intention of the tes tator and the first duty is to give effect to that intention unless the law reprobates it. To accomplish this, conflicting clauses must be harmonized or if they are irreconcilable, the last disposition must prevail over those that precede it. Courts will presume that a testator meant to dispose of his property as the law permits him to do rather than that he intended to do what was unlawful, and will construe his disposition accordingly.

There is not a prohibited substitution in this disposition of property by last will;—"I give and bequeath to my wife all the property movable and immovable which I leave at my death but in usufruct only, and after her death said property is to be divided equally between my son and the heirs of my said wife, and for that purpose I give her in full ownership one-half of what I may leave, and the other half to my said son to be by him enjoyed after the death of my said wife."

Construed to mean that one-half of the estate was bequeathed to the wife in full ownership and the other half to the son, but as the testator could give to his wife no more than one-third of his estate, the son being of a previous marriage, her bequest was reduced to one-third.

APPEAL from the Civil District Court for the Parish of Orleans. Monroe, J.

*Braughn, Buck, Dinkelspiel & Hart* for Plaintiff and Appellee.

*White & Saunders, Semmes & Legendre* and *E. J. Wenck* for Defendant and Appellant.

The opinion of the Court was delivered by

MANNING, J. The first wife of R. F. Theurer died in 1869 leaving a son sole issue of her marriage. The only asset of her succession was her share of the community, and the inventory shewing the appraised

value thereof to be $37,897.31, one-half of that sum was certified by the clerk as the appraised value of the minor's property. The property consisted of a stock of goods appraised at $24,897.31 and the residue was the appraisement of the real estate. No mention of debts appeared on the inventory. Shortly after the wife's death the husband applied for the adjudication to himself of her share of the community and after the usual proceedings the adjudication was made. The husband then applied for permission to substitute a special mortgage in lieu of the general one that resulted from recording the abstract of the inventory and permission having been given, a special mortgage was given by him for $18,948.65 the full amount of the inventoried value of one-half of the community property.

Theurer married again shortly after his first wife's death. This second marriage lasted about fifteen years but there was no issue of it. He died in 1884 leaving his second wife surviving and the son of his first marriage as his only heir. His will was probated and contains this disposition of his property;—

"I give and bequeath to my wife Wilhelmina Henrietta Theurer all the property movable and immovable which I leave at my death, but in usufruct only; and after her death said property is to be divided equally between my son and the heirs of my said wife, and for that purpose I give her in full ownership one-half of what I may leave, and the other half to my said son to be enjoyed by him after the death of my said wife."

Mrs. Theurer was appointed executrix in the will, qualified, and filed a provisional account which was opposed by C. W. Theurer the son, the opposition being based mainly on the claim asserted by him to be recognized as a creditor of his father's estate for $18,948.65, the inventoried value of one-half of the community between his father and mother, with interest from the date of his mother's death. Pending this opposition he filed a suit against his step-mother to annul his father's will and demanded a partition, which she answered denying that he was a creditor on the ground that the community of the first marriage was insolvent, and averring the validity of the will but admitting that the disposition in her favour was reducible to the disposable quantum. This suit and the opposition to the account were tried as one and the court sustained the opposition, declared the will to be valid, interpreted it as giving to the second wife the usufruct of one-half of the estate and reduced it to one-third.

Two questions are presented for adjudication ;—

1. Whether it is permissible to receive testimony of the insolvency

of the first community in the face of the judicial proceedings whereby the wife's share thereof was adjudicated to the surviving husband and a mortgage executed to secure the amount thereof to his son and him.

2. Whether the will is valid and if valid, what was the meaning and intent of the testator.

The widow offered in evidence an act of sale from Caspar Theurer to R. F. Theurer of date Aug. 18, 1868, of the stock of goods, the price being $25,000 payable in two equal instalments one and two years from date—also these two notes which she proposed to prove were paid after the dissolution of the first community, and she offered further to prove the payment of other debts of the first community such as law charges, revenue taxes, etc. On objection by the son the court excluded the evidence on the ground that it contradicts the judicial admissions and declarations of the testator and the adjudication made to him of the community property at a stated price and the judgment homologating and accepting the special mortgage to secure that price.

The first wife died June 12, 1869. The first maturing note for the purchase of the goods was not due until Aug. 18, 1869. It is therefore certain that the whole of the purchase price of the goods was unpaid when the first wife died, and that price constituted two-thirds of the appraised value of the community property. If evidence to shew this condition of things is legally inadmissible, it is not difficult to foresee what incalculable injury may ensue from the establishment of such a principle, and how a second set of children and their mother a surviving widow may be put at the mercy of those by a first marriage.

It would do violence to the spirit as well as the letter of the enactments providing for the recording of abstracts of inventories in the interest of minors to hold that they were conclusive of the sum due them. A natural tutor cannot be confirmed until this abstract has been recorded. Rev. Stats. sec. 2360, and to wait until the debts have been paid and the residuum of the estate ascertained before recording would leave the minor for years sometimes without any protection, while on the other hand if the immediate or speedy recording of the abstract is to irrevocably bind the parent to the payment of the sum appearing thereon, he is seriously injured and his resources perhaps fatally crippled. The legislature therefore has *ex industria* declared that the recording of any instrument of this kind shall in no manner be evidence of the validity of the debt or claim. Rev. Stats. sec. 2365.

And if the recording an abstract of the inventory for the purpose of creating a mortgage upon the general property of the tutor is in no manner evidence of the validity of the debt that such mortgage se-

cured, how can the execution of a special mortgage by the tutor upon a particular piece of property for the purpose of lifting this general mortgage be regarded as conclusive proof of the existence as well as the amount of the debt. One and perhaps the chief object in permitting a tutor to give a special in lieu of the general mortgage upon all his property was to prevent a mass of property being put out of commerce, but this would be wholly defeated if a tutor should wait until the residuum of an estate should be ascertained and the minor's share fixed, and wait he must if it is established as law that when he gives this special mortgage he is forever bound by its recitals of the sum due.

While there has been no express adjudication on the question now raised the judicial mind was manifestly penetrated by the same thoughts we have now expressed, for in Vascocu v. Smith, 2 Ann. 828, the court say "adjudications of common property to the surviving parent are generally made without taking into consideration the charges of the succession of the deceased and their gross amount does not of itself make proof of the shares of the heirs, but if it did, the father in this case is the warrantor of the defendant so far as the assets left by him will go," and in Massey v. Steeg, 12 Ann. 78, the court say "the heirs of the deceased it is perfectly clear can only claim one-half of the price of the adjudication in right of their mother, after deducting therefrom the debts of the community which may have been extinguished or payment effected by their father and natural tutor, and the costs incurred in the proceedings relative to the administration of the estate and adjudication of the property to him." This Court has held that a special mortgage given by a tutor does not import a confession of judgment for any specific sum, and that executory process cannot issue thereon unless there has been a settlement of accounts or a statement of them shewing the actual indebtedness. Ritter v. Faessel, 34 Ann. 416.

This being so, and it must be so if the laws touching the descent of property and the settlement of successions are regarded, how are heirs to be restricted to their shares if evidence is excluded by which alone the shares can be ascertained. The minor child of Theurer was only entitled to his mother's half of the community, and that half cannot be ascertained until its debts are paid. If evidence of the debts is excluded there can be no just conclusion reached of the sum really due him.

We apprehend it is not disputed as a general proposition that the heir is entitled only to the residuum of an estate after its debts are

paid, but it is argued the rules of evidence vigorously forbid proof offered, as this is alleged to have been offered, to contradict judicial admissions and recitals in an authentic act.

In ruling that the evidence tendered by the widow should have been received, we have no idea of abrading the general principle that protects the sanctity of judicial declarations and authentic recitals, nor do we think that principle at all involved in the present discussion. We but give effect to an express law when we say that recording an inventory is no evidence that any sum is due a minor, and we deduce the corrollary that as that act is done for the purpose of creating a general mortgage, the substitution of a special mortgage in lieu of it no more concludes the parties as to the amount of the debt than does the recording of the inventory. They are each and all particular acts required to be done in certain contingencies to accomplish certain purposes, and the law that required the performance of them fixes their meaning and limits their effect and consequence.

The will is attacked as containing a prohibited substitution. Undoubtedly it does, if one clause is to be read to the exclusion of another, or if a part of a clause is to be read omitting other significant parts of it.

Modern jurisprudence has long imperatively demanded that the intent of a testator must be extracted from his language however obscure, if it be possible, and that effect must be given to that intent unless the law reprobates it, and therefore apparently conflicting clauses must be harmonized or if they cannot be, one must prevail over another. Words are accordingly construed in their common acceptation rather than by their technical meaning. Succ. of Burnside, 35 Ann. 708.

There was a time when the courts, saturated with a blind subservience to forms and dominated by a haughty determination to make men speak in the language of legal formulas, would not tolerate the use of any other than those formulas. The common-law lawyers with their vigorous notions of the sacramentality of certain words would sacrifice an estate to save a definition, but the common sense of the profession and the liberal spirit that animates it revolted from this bondage and an emancipation from the slavery of technical construction began.

Our Code textually instructs the courts to endeavor to ascertain the intention of the testator as a principal aim, Rev. Civ. Code, art. 1712, and this Court has often repeated its recognition of that duty, and has said it must in cases of doubt presume that the testator intended to do

that which was lawful rather than that which was prohibited by law, and it must carry into effect his will unless it clearly violates some prohibition of the legislature. Roy v. Latiolas, 5 Ann. 552.

The first clause of the will gives the wife the usufruct of all the property, and the second gives to her one-half of it in full ownership and to the son the other half subject to the wife's usufruct of that half.

The lower court held there was no substitution, maintained the validity of the will, and construed it as giving to the wife the usufruct of one-half of the property and reduced it to one-third under the Act of 1882. Sess. Acts, p. 10.

The first part of the judgment is right. The second is error. The wife takes one-third of the estate in full ownership.

It is obvious there is no substitution. The first disposition is :—I give and bequeath to my wife all the property movable and immovable which I leave at my death but in usufruct only, and after her death said property is to be equally divided between my son and the heirs of my said wife.

Standing by itself this would be a bequest to the wife of the usufruct of the whole property, and a bequest of the property to the son and the wife's heirs in equal parts.

The succeeding clause is in part inconsistent with that disposition, modifies it, and being last controls it. Rev. Civ. Code, art. 1723; Suc. Boone, 7 Ann. 127. It begins significantly "and for that purpose," that is to say, in order to carry out my real intention and to prevent misconception of that intention I now proceed to say what I mean ;— for that purpose I give her (the wife) in full ownership one-half of what I may leave, and the other half to my said son to be by him enjoyed after the death of my said wife.

And that meaning thus expressed is that his wife should have the usufruct of the whole estate and full ownership of one-half, and that the son should have the ownership of the other half subject to the wife's usufruct thereof, but as the testator cannot give to his wife either in full property or in usufruct more than one-third of his estate, the bequest is reducible to the full ownership of one-third and the residue goes to the son.

It is often difficult to ascertain the real intention of a testator because of the want of precision of the writer of his will. We do not encounter in the will before us the difficulties that the counsel for the son thinks are insuperable, but if they were greater than they appear

to us we should feel our duty to be to reconcile conflicting dispositions. unless irreconcilable, to extract from crude expressions and ill-arranged sentences their real meaning, to give effect to the testator's intention. however inartistic his language, and to annul only so much of his testament as is reprobated by law or is contrary to its express enactment. Aubry v. Cajus, 8 La. 43; Clark v. Preston, 2 Ann. 580.

We conform to these cardinal rules for the interpretation of wills in our decree, but as the evidence of the debts of the first community was excluded the case must be remanded to admit and consider it. Therefore

It is ordered and decreed that the part of the judgment of the lower court that sustains the validity of the will is affirmed; that the part that construes the will as bequeathing to the widow Theurer only the usufruct of one-third of the estate is amended, and that she is adjudged and decreed to take under the will one-third of the estate in full ownership; that the part that recognizes the son Charles W. Theurer as a creditor for over eighteen thousand dollars is avoided and reversed, and that the cause is remanded for the purpose of admitting the testimony which we have declared was improperly rejected and for trial of any issue arising thereon in accordance with the views expressed in this opinion, the costs of this appeal to be paid by C. W. Theurer and those of the lower court to await the final decision of the cause.

## ON APPLICATION FOR REHEARING.

FENNER, J    The final clause of article 331, R. C. C., has no application to a special mortgage given to secure the value of the entire interest of the minor in the property of the deceased parent, said interest having been adjudicated to the surviving parent at its appraised value according to law.    In such case there is no liquidation, and no necessity for liquidation of the minor's rights which can only be ascertained after settlement of the community.

The mortgage being, by its terms, given only to secure the rights of the minor, "up to the sum of $18,948.65," that sum is the limit, but not the measure, of the amount secured, which latter amount is the eventual right of the minor.    See Linn. vs. Dee, 31 Ann. 217.

We see no reason to disturb our opinion or decree.

Rehearing refused.