No. 14,181.

SUCCESSION OF ALICE JONES WELLER.

SYLLABUS.

1. In interpreting a last will and testament, effect must be given to the words of the bequest, " to be his as long as he lives."

2. The clause is not attacked by the heirs, and the legatee, on the other hand, asks for its enforcement as being absolute and unrestricted.

3. When it becomes necessary to treat with the subject of life estate, it is possible, consistently with jurisprudence, to safeguard interests by requiring compliance with the laws relative to usufruct.

4. Security to secure the return of the property may be required of the usufruct-uary, which, however, cannot be made to operate as a hinderance to the enjoyment of the property, for the usufructuary is entitled to the revenues resulting, after having complied with the articles of the Code on the subject, even though he may not have furnished security.

5. The one treated as usufructuary cannot be required to pay the debts of the succession before going into possession and enjoying the usufruct.

APPEAL from the First Judicial District, Parish of Caddo.— Land, J.

*Holbert & Barret* and *Leonard, Randolph & Rendall*, for Opponents, Appellees.

*Leon R. Smith*, for Legatee, Appellant.

The opinion of the court was delivered by

BREAUX, J. The interpretation of a will is at issue. The testatrix, Alice Jones Weller, departed this life at Butté, Montana, on the seventh of December, 1901. The following is her testament:

"All my property which is situated in Shreveport, La., consisting of two lots on Spring street of the Jones subdivision, their numbers being, as well as I remember, 5 and 8, and all the improvements thereon, which are cottages 931 and 1015 Spring street, including cisterns, I will, and bequeath to my husband Marshall Weller having been and being my best friend and only protector. Should I at any time pass away in a foreign State, it is my desire that this will which is written in my own handwriting, to be carried out to the very letter and my possessions, both in Shreveport or any that I may be fortunate to possess afterwards or in any other State, I will and bequeath to Marshall Weller to be his so long as he lives.

"This is my last will and testimony which is written by my own free will and consent and at my own suggestion, and by no dictation from other parties.

"God is my judge and only witness. Should I pass away before my husband, Marshall Weller, then this will to be carried out as written."

The contention of the heirs of the late Mrs. Weller, consisting of her brothers and sisters or their representative, is that under the will her husband, Marshall Weller is entitled to the property during his life and at his death it passes to them as owners. In other words that

they are owners of the fee simple and that he has only the usufruct of the property. While on the other hand, the contention of the learned counsel for the husband is that her purpose was solely to give "her all" to the husband to the exclusion of her indifferent relations.

We are informed by the argument that the testatrix was a lady of much simplicity and gentleness of character; that she left her home in Shreveport alone in the summer of 1901, going to the West in search of a new home and that while in Denver she met Marshall Weller to whom she was married in July of that year. She lived about two months after her marriage. She made her will early in August and died suddenly in September following. After her death the will was produced by the husband.

It was presented for probate, evidence was heard, and it was admitted to probate and order was issued for its execution according to its terms which were interpreted to be as follows: That under the will the husband, Marshall Weller, is entitled to the use of the property of the testatrix and his claim as owner was rejected and the heirs at law of Mrs. Alice Weller named in the judgment were recognized as the owners of the property in the proportion stated.

The husband was authorized to take possession of the property upon paying the debts of the deceased and furnishing bond in amount set forth. From this judgment, the husband has taken this appeal.

Unquestionably the clear intention of the testatrix should prevail. If we were warranted to stop after having considered the first clause of the will bequeathing all of her property to her husband, the intention would be evident enough. As interpretors of the will, we are not at liberty to confine our analysis to the first clause. A consideration of the entire text is necessary in order to arrive at the intention.

The protection and friendship of the husband, as declared by the wife in her will a few weeks after her marriage, adds little one way or the other to the clauses of the will, for it can as well be said that she bequeathed the usufruct to him because of his friendship and protection as to say that on that account she intended to give him the ownership absolutely. Her acquaintance with him was of a comparatively recent date. There is no such evidence in the record as to give rise to an unavoidable inference of a determination on her part to completely disinherit her brothers and sisters or their descendants.

The words employed by her, the property to be his "so long as he

lives," have a distinct meaning to which she in concluding adds force by expressing the wish that "this will be carried out as written. "Applying the general rules of interpretation and construction, the ownership was only partial in that it was expressly limited to the life of the legatee. We are led to believe that she understood the meaning of words. She would not have limited her gift had it not been her intention. The will must be construed and taken as written. Ball vs. Executors, 40 Ann. 284.

We have carefully considered the jurisprudence of this court upon the subject. It has been decided that an estate for life is not an usufruct. The question was passed upon by a divided court. Imperfect ownership was treated as a distinct right of property in the thing transferred. Reasoning from this premise, the court arrived at the conclusion that the will contained a substitution and considered as null the clause bequeathing an imperfect right. The right of the heirs as owners was recognized. Marshall vs. Pearce, 35th Ann. 558. The clause construed as a substitution was annulled in the cases of Provost vs. Provost, 13 Ann. 574; Anderson vs. Pike, 29th Ann. 120.

There is no question but that a will by which property is devised to one and at his death to another involves a prohibited substitution which avoids the devise.

In the case before us for decision the clause, as we take it, is not particularly attacked. The husband, of course, does not attack the clause, which he seeks to invest it with *post mortem* effect disinheriting the heirs, while, on the other hand, learned counsel representing the heirs set forth that they are not unmindful of the fact that they could have urged with much force that the will contains a prohibited substitution, but that they were mindful of the further fact that the law prefers at all times a principle of construction that will prevent total intestacy, a principle which found its origin in Roman law. They, for that reason, did not seek to have the claim decreed null.

In view of the terms of the will we would not be warranted in holding that the husband is the unqualified legatee of the testatrix, and on the other hand we can imagine no good reason not to adopt an interpretation which will give effect to the wishes of the testatrix.

This brings us to the subject of usufruct. The imperfect ownership growing out of the restrictions of the right to a life tenure of property has, as we think, no place in the laws of this State, unless it is to be considered in the light of an usufruct.

Imperfect ownership gives the right of enjoyment and even of disposal when it can be done without injury to the rights of others, that is "those who may have real or other rights to exercise upon the same property." In Matter of Morgan R. R. Co., 32 Ann. 371. C. C. 492. This right of others can be safeguarded by enforcing laws relating to usufruct.

The legatee's contention is that if one is unable to give the required bond he may not derive the enjoyment to which he has a right. The law has gone as far as possible in that event to protect the rights of the usufructuary by providing for investment on his failure to give bond. C. C. 563.

Lastly, with reference to the debts which the usufructuary has been condemned to pay in the judgment before taking possession, this is a matter of advance, if not made by the usufructuary, the heir has the choice of making it or to sell part of the property. C. C. 585. The usufructuary would have all right on the remainder after a sale to pay debts, but he cannot as a condition be required to pay the debts.

Before concluding, we wish to refer to one of the decisions cited to by counsel for Weller in which the *syllabus* seems to have bearing. Succession of Justus, 45th Ann. 190. We have examined the record and find that there was a question of prohibited substitution involved which was not pressed. The *syllabus* is not sustained by the text although in strict accord with the views expressed by this court in preceding decisions to which we referred *supra* (*i. e.,* 34th Ann. 558, and the decisions referred to in that opinion) in connection with which the *syllabus* is to read.

The judgment appealed from is amended by striking therefrom the following: "The husband is authorized to take possession of the property upon paying the debts of the deceased."

As amended, the judgment is affirmed at appellee's costs.

BANCHARD, J., takes no part.