(45 South. 520.)

No. 16,823.

Succession of VERNEUILLE.

(Jan. 20, 1908.)

1. HUSBAND AND WIFE — LIFE INSURANCE — POLICIES—PARAPHERNAL PROPERTY.

The policies of insurance were issued to the husband some time before the marriage. They formed part of his separate estate, and the proceeds were properly placed to the credit of his property.

[Ed. Note.—For cases in point. see Cent. Dig. vol. 26, Husband and Wife, §§ 886–892.]

2. WILLS—CONSTRUCTION—LIFE USUFRUCT.

The will of the testator read: "All my property to my wife for her life except the forced portion to my father and mother."

That was the donation of a life usufruct, and not, as claimed by the legatee, an absolute donation of the property forever.

3. SAME—INHERITANCE.

Usufruct to the wife except the forced portion. At the death of the legatee, the property will pass to the heirs.

4. HUSBAND AND WIFE — COMMUNITY PROPERTY—POLICIES.

The premiums paid by the community were properly credited to the community.

5. SAME—NOT A COMMUNITY ASSET.

It being evident that the community did not own an amount deposited in bank to the credit of the opponent's husband, it cannot be properly placed to the credit of the community.

It was a matter of impossibility as made to appear by the testimony for said amount to have been earned by the community.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Thomas C. W. Ellis, Judge.

In the matter of the succession of John H. Verneuille. Appeal of Mary Verneuille, plaintiff in rule. Affirmed.

Robert John Maloney, for appellant Mrs. Mary Verneuille. James Edwin Zunts, for appellees J. B. Verneuille and others. Joseph Wheadon Carroll, for appellee testamentary executor.

BREAUX, C. J. John H. Verneuille departed this life in the year 1904, leaving a widow.

He left a will.

We are called upon to construe its terms.

Before taking up the cause for decision, we will state that the inventory of the succession consisted of personal property, cash in bank, pieces of real estate, and life insurance policies. The whole inventory amounted to $8,132.93.

The deceased was married to Mrs. Mary Verneuille on the 10th day of April, 1901. She survives him.

Policies of insurance were issued to him about a year before his marriage.

The late John H. Verneuille, the insured, left a father and mother, brothers, and sisters. They are appellees.

The testamentary executor prepared an act of administration, which was filed on June 20, 1905.

This account shows cash collected by the executor $5,005.87, all deposited in bank, except $267.25, being items No. 4 and 7 of debts paid with consent of the widow of the deceased.

The amount of debts as per account is $1,195.15, leaving assets $3,810.72.

There were details referred to in the account not noted, as they have no special importance and only make it manifest that the executor was moved by a desire to account for every item, even the smallest item.

Mrs. John H. Verneuille (the widow) opposed the account filed by the executor on a number of grounds.

We will take up the first ground of opposition as relates to importance.

As relates to the facts involved on this point:

The late John H. Verneuille was the owner of two life insurance policies made payable to his estate (before his marriage) with opponent, Mrs. Verneuille. He was twice married. After the death of his first wife, he became the husband of opponent.

The said opponent claims that the one half is due her as widow in community, being an amount collected from the New York Life

Insurance Company, and that she is entitled to the usufruct of the other half.

The point is presented by opponent that each payment of premiums on the policies by John H. Verneuille after his marriage out of the community was in the nature of renewal of the policies, and that, in consequence, the policies were renewed for the community, and not for his separate estate.

Our jurisprudence does not sustain that contention. On the contrary, it holds, in effect, that a policy issued to one of the spouses before marriage remains as part of the estate of the insured. The right of the beneficiary is not changed by the marriage. The date of the right is the date of the policy, and from that time on it remains the property of the insured.

If it were otherwise, subsequent acts would have retroactive effect.

Succession of Buddig, 108 La. 406, 32 South. 361, citing Estate of Moseman, 38 La. Ann. 219.

At the date of the marriage, the husband owned this policy in his right absolutely, and he had stipulated that he alone was to be the beneficiary. This contract of insurance is a contract binding upon the community, and secures a property right as distinct as any right which one of the spouses can have against the other for property owned at the date of the marriage.

Policies of insurance must be held subject to one rule as relates to ownership. It has always been decided by the courts of this state that it is vested in the insured absolutely when it is issued to him at a date and for his benefit, free from the claim of any other person.

Holding, now, that the husband's estate is entitled to the amount collected on the policies, we will later pass upon the matter of premiums paid from community funds during the marriage.

We now take up for decision the matter of the will and the extent to which Mrs. Verneuille is entitled to recover. She must be limited to a life usufruct. We must decline to hold that she, as she claims, is entitled to all the estate of the deceased as universal legatee, except to the third inherited by Verneuille's father and mother.

She, as we construe the will, is entitled to a life usufruct on the estate of the decedent, and nothing more; also to one-half of the community in the cash left by the deceased, and to one-half of all amounts paid by the community for the benefit of the separate property of the deceased.

Mrs. Verneuille is not entitled to recover as universal legatee.

The following are our reasons for thus holding:

The last will of Verneuille gives "all my real estate and personal property to my wife for her lifetime except what the law allows to my mother and father."

This is an excerpt from the will. The will is in the olographic form, as before mentioned. It is evident enough that he intended to give and did give a life usufruct to his wife, and not the absolute ownership of the property. No other reasonable construction can be placed on the words used. The word "lifetime" qualifies the gift in such a way that it must be limited to the usufruct.

The testator surely knew that, if he gave the property for or during the natural life of the legatee, the benefit of the gift would end with her life, and would not pass to her heirs. Thus limited it can only be a life usufruct.

This usufruct, however, does not interfere with the portion of the father and mother jointly due them, being the one-third of the property of the deceased and of the revenues accruing to said one-third and one-third of one-half of the community.

We, in the next place, take up for decision opponent's claim that she is entitled to the marital fourth of the estate, and that she

be allowed additional time to determine which she shall take—the life usufruct in case the court decide that she is entitled to that usufruct, instead of the universal legatee she claims, or the marital fourth.

This claim is not made in the application of Mrs. Verneuille in her opposition to the account. It is only suggested in brief of counsel on appeal. It is suggested in her behalf that she could not set up that claim before the will had been construed.

We cannot agree with that view, inasmuch as we think that she might have asked for the marital fourth in the alternative. If she had any right to this said fourth, there is no particular objection to reserving it; but we must decline at this time to do that which has the appearance of a vain thing. If she has any right at all as such, it can be passed upon hereafter without reservation on our part. As no issue regarding this marital fourth was raised, we will leave it out without prejudicing the claim in any respect any further than it may be prejudiced on the ground than that it has not been timely demanded. That is a matter that may be hereafter raised, with which we are not now concerned.

In the next place, opponent claims payments made on the policies during community. We alluded to that claim above, and said that we would pass upon it later.

The community is unquestionably entitled to the amount. The separate estate cannot be benefited by payments for its benefit and not be indebted for them. This was not disputed at bar. The counsel representing the executor said that the amount had already been allowed in the account.

Upon examination, we find that it is as stated. The account shows $492 premiums paid on life insurance. Evidently those are the premiums to which opponent refers. They cannot be allowed twice.

That disposes of that question.

120 La.—20

In the next place, opponent claims $721.28 in the Teutonia Bank, and $138.50 in the hands of the People's Building Association, and $144.75 in the hands of the Hibernia Bank as community property.

We do not find it possible to agree with that view. These amounts aggregate $1,004.43. The record discloses that the marriage estate continued three years and nine months. The last nine months plaintiff's husband was too ill to earn a salary. His salary of $125 per month was the only revenue of the community. Opponent testified that it was barely enough to pay expenses of the family. There is also in the transcript a letter of the late husband to the same effect.

The other amounts allowed to the community aggregate $2,351.51, so that, if we were to hold that the amount claimed is community fund, we would, in effect, hold that the community earned $2,351.51, plus $1,004.43, an impossibility.

We have examined the figures as closely as we could. We are of opinion that, as before stated, they are correct. We must decline to allow that amount as belonging to the community.

There are other minor issues which we do not expressly pass upon, as it would serve no purpose, and does not change results.

For reasons assigned, the judgment of the district court is affirmed.