(85 South. 908)

No. 23893.

Succession of LEDBETTER.

(June 30, 1920.)

*(Syllabus by Editorial Staff.)*

1. Perpetuities &⟜4(19)—Where usufruct is given to one person and naked ownership to another, title passes immediately.

When the testator gives the usufruct to one person and the naked ownership to another, the title to the property itself, as well as the usufruct, is transmitted immediately at death of deceased.

2. Perpetuities &⟜4(19)—Devise of life estate and not usufruct.

A will, devising property and providing, "but should he die without an heir or child, I wish his part of my estate to be paid or go to my present grandchildren," etc., *held* to give not the usufruct, but the ownership during devisee's lifetime of the property itself, and hence the devise was invalid.

3. Perpetuities &⟜4(19)—Giving of property for lifetime to another not giving of life usufruct.

The giving of property to one during his life and at his death to another is not the giving of usufruct to one and naked ownership of property to the other, and such a devise is null and void under Civ. Code, arts. 1520, 1522.

4. Wills &⟜866—Forced heir receiving bequest not entitled to more than legitimate portion of intestate estate without declaration.

The inference is that, when no such declaration has been made by a testator, a bequest to one of his children is not intended to be over and above his legitimate portion of a certain bequest to another heir held invalid, under Civ. Code, art. 1501.

Appeal from First Judicial District Court, Parish of Caddo; R. D. Webb, Judge.

In the matter of the succession of Dr. J. M. Ledbetter. Suit by Dr. W. M. Ledbetter in the form of an opposition to probate of will of deceased, when Dr. Marion A. Ledbetter petitioned the court to admit it to probate. From an adverse judgment, W. M. Ledbetter appeals. Judgment annulled, with directions.

Chas. F. Crane, of Shreveport, for appellant.

David B. Samuel, G. W. Hardy, and Edward Barnett, all of Shreveport, for appellee Dr. Marion A. Ledbetter.

O'NIELL, J. Dr. Wiltz M. Ledbetter appeals from a judgment dismissing his suit to annul certain provisions in the will of his deceased father, Dr. J. M. Ledbetter, as constituting a prohibited substitution. The will is as follows, viz:

"Know all men by these presents, that I, Dr. J. M. Ledbetter of the city of Shreveport, in the parish of Caddo, and state of Louisiana (retired physician), considering the uncertainty of this life and being of sound mind and memory do make and declare this my last will and testament.

"First, I give and bequeath to my beloved wife, Martha, the use of my dwelling house,

1918 Jacobs street, situated in Shreveport, Louisiana, with all the contents therein or income derived therefrom, to have and to hold the same to her during her natural life, so long as she may remain single or unmarried. In addition to the above, and eight thousand dollars life insurance made payable to her at my death, I bequeath to her, or wish paid to her two hundred dollars per month to be paid out of the revenues or income of my estate.

"Second. After complying with the above provisions, I wish my son, Dr. Wiltz M. Ledbetter, to have the half of remaining part of my estate or the half of the revenues therefrom during his lifetime. But should he die without an heir or child I wish his part of my estate to be paid or go to my present grandchildren, viz.: Wiltz M. Ledbetter, William V. Ledbetter and Joanna Ledbetter (children of Dr. Marion Ledbetter) and equally with these any other grandchildren that may yet be born.

"Third. Out of the remaining half of my estate, after complying with the first bequest, I wish five thousand dollars to be paid to each of my present grandchildren, viz.: Wiltz M. Ledbetter, William V. Ledbetter and Joanna Ledbetter, and the above amounts to be put in trust for them until they complete their high school education, then enough given them each year to enable them to procure a collegiate education and profession if they so desire, then the balance to be paid to them after the completion of their education and professions.

"Fourth. The remaining part of this half of my estate, after providing the fifteen thousand dollars for his three children, I wish paid to or the revenues therefrom to go to my son Marion A. Ledbetter.

"Fifth. Should any other children be born to either of my sons I wish five thousand dollars to be set aside for them as above provided for the ones mentioned, said five thousand to be taken from the half of the one to whom the child is born.

"This done and signed February 26, 1916.
                              "J. M. Ledbetter."

The suit was brought in the form of an opposition to the probate of the will, when Dr. Marion A. Ledbetter petitioned the court to admit it to probate.

The only heirs at law of the testator are his two sons, Dr. Wiltz M. Ledbetter, plaintiff in this suit, and Dr. Marion A. Ledbetter, defendant. Dr. Wiltz M. Ledbetter has had no children. Dr. Marion A. Ledbetter has only the three children named in the will, who are represented as defendants herein by a tutor ad hoc. The widow of the testator, Mrs. Martha Ledbetter, who is not the mother of his sons, has been settled with, and has no interest in the suit.

Plaintiff contends that the second paragraph in the will is a prohibited substitution, which, under article 1520 of the Civil Code, is null, viz:

"After complying with the above condition, I wish my son, Dr. Wiltz M. Ledbetter, to have the half of the remaining part of my estate or the half of the revenues therefrom during his lifetime, but should he die without an heir or child, I wish his part of my estate to be paid or go to my present grandchildren, viz.: Wiltz M. Ledbetter, William V. Ledbetter and Joanna Ledbetter."

Plaintiff contends that, if the foregoing bequest should be carried out, as a bequest of a life estate to him and full ownership, at his death, to the three children of his brother, it would deprive him (plaintiff) of his legitimate portion of the estate, as a forced heir; that is, one-half in full ownership of the remainder of the estate after paying the special legacies to the legatees other than his brother, not exceeding the disposable portion.

Defendant's counsel rely upon the proposition, as stated in their brief, that a testamentary disposition by which property is given to one legatee during his life and at his death to another must be regarded as vesting a life usufruct in the one and the naked ownership in the other legatee.

Article 1522 of the Code permits the giving of the usufruct of property to one legatee and the naked ownership of the same property to another. But, if every substitution, by which property is given to one legatee during his life and at his death to another, is to be regarded as vesting a life usufruct in the one and the naked ownership in the other legatee, article 1520, which prohibits such substitutions, must have lost

its meaning. Why should the Code make a distinction, and why should this court have been so long recognizing the distinction—if there is no difference—between (1) the giving of the same property to one legatee for life and to another at the first legatee's death, and (2) the giving of a life usufruct to one legatee and the naked ownership to another?

Defendants' counsel cite, in support of their proposition, an expression of this court in the Succession of McDuffie, 139 La. 910, 72 South. 450, viz.:

"No useful purpose would be subserved by discussing, as res nova, the question whether a bequest of property for the life of the donee is the donation of a usufruct, or of a life estate. The jurisprudence on this subject was reviewed by this court in the recent case of Rice et al. v. Key et al., 138 La. 483, 70 South. 483; and the court, referring to the cases of Roy v. Latiolas, 5 La. Ann. 552, Succession of Weller, 107 La. 466, 31 South. 883, and Succession of Verneuille, 120 La. 605, 45 South. 520, said:

"Moreover, the doctrine that a bequest of property for life is, in this state, a donation of the usufruct has been thrice held by this court. The rule of stare decisis is applicable."

The ruling in the Succession of McDuffie was therefore nothing more than a repetition or quotation of the doctrine stated in Rice v. Key. And the statement of the doctrine in Rice v. Key was based upon the citation of three decisions, not one of which sustains the ruling, viz. Roy v. Latiolas, 5 La. Ann. 552, Succession of Weller, 107 La. 468, 31 South. 883, and Succession of Verneuille, 120 La. 605, 45 South. 520. The first of the three decisions referred to was emphatically overruled in Marshall v. Pearce, 34 La. Ann. 561, and in the two other cases cited there was no question of prohibited substitution.

Here is what was said in Marshall v. Pearce, overruling Roy v. Latiolas, viz.:

"The case of Roy v. Latiolas, 5 A. 552, is the only one in which a bequest for life, without words expressly tending to qualify it as an usufruct, was held to import such. That decision was rendered at Opelousas, when but three judges were in their seats, Chief Justice Eustis being absent. Judge Preston was the organ of the court. Judge Slidell, in assenting, expressly referred to the limited means he had had of examining the subject. Judge Rost dissented.

"Its authority is of the weakest kind. The opinion rests upon the grossly unscientific proposition that 'there is no substantial difference between a life estate and an usufruct for life; the rights and duties of the parties are the same in each case.' Judge Rost rightly said: 'An estate for life is not an usufruct.' Obviously, there is not only a substantial difference between an estate for life, or an imperfect ownership for life, and an usufruct, but they are absolutely inconsistent with, and contradictory of, each other; and the rights and duties of the parties are entirely dissimilar, as we have already shown.

"We cannot follow this decision. It renders the decisions quoted above simply absurd. For of what use or moment would it have been to discuss the effect of the qualifying words in those several cases if the mere fact that the bequest was for life was sufficient to stamp it as an usufruct, and thereby to sustain the will?

"With great respect for the ability usually displayed by the judges who participated in that decision, we are compelled to say that the proposition on which it rests is so preposterously untenable that we can only characterize it as an example of Homeric nodding. With all possible desire to effectuate testamentary dispositions, and to impress upon them a lawful, rather than unlawful, meaning, the language of this will and the collocation of the two bequests in separate and independent items leave no possible doubt that the intention of the testator, clearly and unambiguously expressed, was: First, to give to his wife the ownership of this property during her life; and, second, after her death, to give it to his grandson.

"This implies, necessarily, the charge to preserve and return; and, under the imperative mandate of C. C. 1520, the disposition must be declared null."

It was said in Rice v. Key that the decision in Succession of Weller, "in effect, overruled Marshall v. Pearce, and reinstated Roy v. Latiolas, 5 La. Ann. 552." But that was a mistake, because, in the Succession of Weller, the Chief Justice, for the court,

cited Marshall v. Pearce approvingly, and as sustaining the doctrine which he then announced, viz.:

"It has been decided that an estate for life is not an usufruct. * * * There is no question but that a will by which property is devised to one and at his death to another involves a prohibited substitution which avoids the devise."

The court then observed that the doctrine of Marshall v. Pearce was not pertinent to the question presented in the Succession of Weller, because in the latter case there was no contention that the will contained a substitution. In the Succession of Weller, as in the Succession of Verneuille, the testator had not attempted to say what disposition should be made of the legacy at the death of the legatee, but had merely limited the bequest to his lifetime. The question presented in each case was simply whether the legatee acquired full ownership or only a life usufruct.

It is said in the brief of counsel for defendant that the decision in Roy v. Latiolas was cited with approval twice, after it had been overruled in Marshall v. Pearce, and before the decision in Rice v. Key. They refer to the Succession of Theurer, 38 La. Ann. 510, and In re Billis' Will, 122 La. 547, 47 South. 884, 129 Am. St. Rep. 355. The reference to Roy v. Latiolas in those cases was merely in support of the doctrine that the presumption is, in a case like this, that the testator intended to make a legal, not an illegal, bequest. In the Succession of Theurer, the testator gave his property to his wife, "but in usufruct only," and stipulated that, at her death, the property should be divided equally between his son and the heirs of his wife; and he explained, in the will, that his wife should have absolute ownership of one half of the property and a usufruct of the other half, the naked ownership of which he gave to his son. In the case of Billis' Will,

the question now before us was not presented, and was not at all pertinent.

[1, 2] When a testator gives the usufruct of property to one person and the naked ownership to another, the title to the property itself, as well as the usufruct, is transmitted immediately at the death of the testator. In the case before us, the language of the bequest leaves no doubt that the testator intended to give to Dr. Wiltz M. Ledbetter, not the usufruct of half of his estate, but the ownership, during his lifetime, of the same part of the estate which was to go to the testator's grandchildren at the death of Dr. Wiltz M. Ledbetter, viz.:

"But should he die without an heir or child, I wish his part of my estate to be paid or go to my present grandchildren," etc.

It is conceded in the brief of counsel for defendants that the title was to vest or remain absolutely in Dr. Wiltz M. Ledbetter upon the birth of a child for him after the death of the testator. Counsel argue that that condition in the will must be reputed not written, viz.:

"The condition that the title is to vest absolutely in Dr. Wiltz M. Ledbetter upon the birth of a child subsequent to the opening of this succession by the death of the testator, and not otherwise, must be reputed not written, both as creating a tenure of property not provided for in our Code, and therefore impliedly forbidden, and as putting property out of commerce, and therefore contrary to public policy."

To strike out, or regard as not written, the implied condition that the title should remain absolutely in Dr. Wiltz M. Ledbetter if a child should be born for him after the death of the testator would be not an interpretation of the will, but the making of another will for the testator. We have no right nor reason to presume that the testator would have made the bequest to Dr. Wiltz M. Ledbetter except upon the condition that the title should remain in him if a child should be

born for him. The condition which would be reputed not written, if it were not a plain substitution, rendering the whole bequest null, is the condition that Dr. Wiltz M. Ledbetter's part of the estate, at his death, should go to the children of Dr. Marion A. Ledbetter, if no child should have been born for Dr. Wiltz M. Ledbetter. The effect of regarding that condition is not written, however, would be the same as to declare the entire bequest void. If we should declare null the illegal condition, Dr. Wiltz M. Ledbetter would take one-half of the estate by virtue of the will. If we declare the entire bequest null, as a prohibited substitution, Dr. Wiltz M. Ledbetter will take one-half of the estate as a forced heir.

[3] The bequest in this case is as plain a substitution as can be conceived. According to article 1520 of the Code, it is absolutely null. To declare it valid, under the doctrine that the giving of property to one person during his life and at his death to another is the giving of a life usufruct to one and the naked ownership of the property to the other legatee would be an absolute violation of article 1520 of the Code.

Being therefore compelled now to elect whether to correct or perpetuate the error of the doctrine announced in Rice v. Key and repeated in the Succession of McDuffie, we now correct the error, and overrule those decisions in so far as they hold that the giving of property to one person during his life and at his death to another is the giving of the usufruct to one and the naked ownership of the property to the other legatee.

[4] Counsel for defendants argue that the legitimate portion of the estate to which Dr. Wiltz M. Ledbetter is entitled as a forced heir is one-fourth, because, there being two surviving children of the testator, the disposable portion of the estate was one-half. Each of the two forced heirs is entitled to one-half of what remains of the estate after deducting the legacies given to other legatees, other than the forced heirs, and not exceeding the disposable portion, one-half. The bequest of one-half of the remainder of the estate to Dr. Marion A. Ledbetter cannot be given in addition to his legitimate portion, or to the prejudice of the legitimate portion due the other forced heir, because the testator did not declare that the bequest was intended to be over and above the legitimate portion. Article 1501 of the Civil Code declares:

"The disposable quantum may be given in whole or in part, by an act inter vivos or mortis causa, to one or more of the disposer's children or successible descendants, * * * without its being liable to be brought into the succession by the donee or legatee, provided it be expressly declared by the donor that this disposition is intended to be over and above the legitimate portion. This declaration may be made, either by the act containing the disposition, or subsequently by an instrument executed before a notary public, in presence of two witnesses."

The inference is that, when no such declaration has been made by the donor or testator, a donation or bequest to one of his children is not intended to be over and above his legitimate portion. The legacy bequeathed to Dr. Marion A. Ledbetter was therefore nothing more than the legitimate portion due him as a forced heir. In fact, out of his portion, special legacies amounting to $15,000 were given to his three children.

Appellant does not, in this suit, question the validity of the bequests of the special legacies of $5,000 given to each of the three children of Dr. Marion A. Ledbetter. We presume appellant is satisfied that those legacies should be paid out of the one-half portion bequeathed to Dr. Marion A. Ledbetter.

The judgment appealed from is annulled and it is now ordered, adjudged and decreed that the dispositions in the will of Dr. J. M. Ledbetter, deceased, so far as they prej-

udice the right of Dr. Wiltz M. Ledbetter to receive, as a forced heir, his legitimate portion, one-half in absolute ownership, of the remainder of the estate, after deducting the legacies bequeathed to the widow of the testator, are null. Subject to this decree, and so far as it is not now pronounced null, the will is ordered probated and executed. The costs of this suit and of the probate proceedings are to be borne by the estate.