O’NIELL, Chief Justice.
John B. Lamkin died intestate on November 6, 1944, leaving a widow but neither parent nor child. His nearest relations were a brother and sister, who are opposing the claim of the widow in this litigation.
Before Lamkin was married he took out $30,000 of life insurance in the Equitable Life Assurance Society, represented by four policies, the first policy being for $10,- *1092 QUO, taken out in 1926, the second for $5,000, in 1927, the third for $5,000, in 1928, and the fourth for $10,000, in 1929. The beneficiary named in the policies was the insured’s executors, administrators, or assigns, with the right of the insured to change the beneficiary or assign the policy. He was married on July 26, 1930, and a month afterwards — on August 30 — had the company to change the beneficiary by naming his wife as beneficiary in each of the four policies.
Each policy made provision for double indemnity in event of death from accident, and for a monthly disability benefit if the insured should become wholly and permanently disabled before arriving at the age of sixty years. The amount of the annual premium, of course, was stated in each policy, and the portion thereof which was charged for the double indemnity, and the portion charged for the disability benefits, also was stated in each policy.
The insured became afflicted with se~' rious coronary and other physical ailments on March 12, 1939, which then caused total and permanent disability. The provision in each policy, in that respect, was that if the insured should become totally and permanently disabled either by bodily injury or disease, before reaching the age of sixty years, the insurer would:
“(a) Waive payment of all premiums payable upon this policy falling due after the receipt of such proof and during the continuance of such total and permanent Disability; and
“(b) Pay to the insured a monthly Disability-Annuity as stated on the face hereof; the first payment to be payable upon receipt of due proof of such Disability and subsequent payments monthly thereafter during the continuance of such total and permanent Disability.’’
The amount of the disability benefit as stated on the face of the policies was $100 per month on each of the two $10,000 policies, .and $50 per month on each of the two $5,000 policies.
Lamkin made application to an agent of the insurer for the necessary forms on which to file his claim for disability benefits, but, for some reason which is not material here, the claim for disability benefits was not allowed during the lifetime of the insured. After, his death, that is, in December 1944, the widow, having qualified as administratrix, filed her claim, together with the required proofs, for the disability benefits which had accrued during the period from March 12, 1939, the beginning of the disability, to the date of the death of the insured, November 6, 1944.
The insurance company promptly paid to the widow, as the beneficiary named in the policies, the full amount of the life insurance under all of the policies, but disputed her claim for the disability benefits. Thereafter, under an agreement entered into between her and the brother and sister of *1094 the deceased, the insurance company made a compromise settlement by which the company paid to the widow, individually and as administratrix, the sum of $12,000 in settlement of the disability benefits under all of the four policies. As to half of that sum, $6,000, the brother and sister made no claim, but conceded that the amount should be paid to the widow as beneficiary under two of the policies, namely, the one for $5,000 dated in 1928, and the one for $10,-000 dated in 1929. The reason why the brother and sister of the deceased conceded that the widow was entitled to the disability benefits under these two policies was that each of them contained the following clause: “Any Disability Income due but unpaid at the death of the Insured shall be payable to the beneficiary entitled to receive the proceeds of the policy at the death of the Insured.”
The brother and sister of the deceased, however, claimed, as his heirs, the $6,000 of disability benefits paid in settlement of the two policies first taken out by him, namely, the one for $10,000 taken out in 1926, and the one for $5,000 taken out in 1927. The reason why they denied that the widow was entitled to the disability benefits due and unpaid at the time of the death of the insured, under these two policies, was that these two policies did not contain the clause which we have quoted from the two other policies, namely, that any disability income due and unpaid at the death of the insured should be payable to the beneficiary entitled to receive the proceeds of the life insurance at the death of the insured.
It was agreed between the widow and the brother and sister of the deceased that the check for $12,000 which the insurance company had delivered to the widow, individually and as administratrix, should be cashed by her, that $6,000 of the proceeds should be retained by her individually in settlement of the disability benefits due under the two policies as to which there was no dispute, and that the remaining $6,000 should be held by the widow as administratrix, subject to the decision of the court as to whether she or the brother and sister of the deceased should receive the amount. Accordingly, the brother and sister of the deceased proceeded by rule against the widow to collect the $6,000 in dispute. The cause of action stated by them is that the two policies of insurance on which the $6,000 disability benefits accrued during the lifetime of the insured, having been taken out before he was married, were the property of his separate estate and that, although the widow was made beneficiary of the life insurance, she was not the beneficiary of the disability benefits.
The widow pleaded, primarily, that she was the beneficiary of the disability benefits which accrued during the lifetime of the insured, as well as of the life insurance. In the alternative she pleaded that the $6,000 in dispute belonged to the community *1096 of acquets and gains, and that she was therefore entitled to one-half of the sum as surviving partner, and was entitled to the other half by inheritance under Article 915 of the Civil Code, which, as amended, provides that when either a husband or wife .dies, leaving neither a father nor mother nor descendants, and without having disposed by last will and testament of his or her share of the community property, such undisposed of share shall be inherited by the surviving spouse in full ownership. Again in the alternative, she pleaded that if the insurance taken out by her husband before his marriage was the property of his separate estate then the debt due to him for the disability benefits accruing before his death constituted profits or income .from property under his administration and therefore belonged to the community.
The case was submitted in the district court on a stipulation of facts. The judge decided in favor of the widow. The brother and sister of the deceased are appealing from the decision.
Our opinion is that the widow’s first alternative defense or plea is well founded; that is, that the sum in dispute, which was due to her husband for disability benefits at the time of his death, was a community asset and hence that she is entitled to one-half of it as surviving partner in community and to the other half by inheritance under Article 915 of the Civil Code. We come to this conclusion mainly by eliminating the several classes of separate property enumerated in the second paragraph of Article 2334 of the Civil Code, which article provides:
“The property of married persons is divided into separate and' common property.
“Separate property is that which either party brings into the' marriage, or acquires during the marriage with separate funds, or by inheritance, or by donation made to him or her particularly. * * *
“Common property is that which is acquired by the husband and wife during marriage, in any manner different from that above declared.” * * *
The brother and sister of the deceased contend that the fund in dispute comes within the class of separate property described in the second paragraph of Article 2334 of the Civil Code as “that which either party brings into the marriage”. The argument is founded upon the rule, stated in three decisions of this court, that life insurance, if made payable to the insured, or to his executors, administrators or assigns, is either separate property or community property, according to whether he was single or married at the time when the insurance was taken out. Counsel for appellants refer to the Succession of Moseman’s Estate, 1886, 38 La.Ann. 219; Succession of LeBlanc, 1917, 142 La. 27, 76 So. 223, L.R.A. 1917F, 1137; and Succession of Verneuille, 1908, 120 La. 605, 45 So. 520. *1098 To that list might be added Succession of Buddig, 1902, 108 La. 406, 32 So. 361.
Those decisions have reference only to life insurance. They are not applicable to disability insurance. Life insurance, other than term insurance, has a certain value during the lifetime of the insured. On the other hand, disability insurance, like term insurance, has no reserve or cash surrender value, or other actual value before the happening of the event on which the insurance is payable. In this case, for example, that part of the premiums which was attributable to the disability benefits, and which the insured paid previous to his marriage, added nothing to his estate because the event on which the disability benefits depended did not happen previous to the marriage. In that respect he did not bring anything of value into the marriage.
We concede of course that the taking out of the disability insurance previous to the marriage, instead of taking it out after the marriage, was of some advantage to the community. For example, the rate of the premium was less than it would have been if Lamkin had taken out the insurance after his marriage, instead of taking it out, as he did, three or four years before the marriage. Besides, the policies in question are twenty-year endowment policies, which means that if Lamkin had paid the premiums for twenty years he would have had the benefit not only of the paid-up life insurance for the remainder of his life, but also of the disability insurance for a period of five years on the $5,000 policy and for six years on the $10,000 policy, before he would have arrived at the age of sixty years. But we do not consider these advantages which the community received by reason of the taking out of the insurance previous to the marriage of the insured sufficient to justify our holding that the fund in contest is an asset of the separate estate of the insured and not an asset of the community.
Whatever indebtedness the insurance company owed to the insured at the time of his death, as disability benefits under the two policies in question, seems in its very nature to have been an asset of the community. The claim consisted of two items. One item — admitted to be $3,413.02 —was the amount of the annual premiums which the company should have waived— but which the company actually collected— at the rate of $620.55 per annum — during the period of disability. The other item— admitted to be $10,200 — which went to make up the claim which the insurance company compromised — consisted of the monthly payments of $150 per month — which should have been paid but which were withheld during the period of disability. The insurance company, having compromised instead of paying in full the claim for disability benefits, might deny, consistently, that any part of the claim was due to the insured at the time of his death. But the parties to this litigation must concede— as they do concede — that the indebtedness *1100 for disability benefits actually existed, .otherwise there would be no fund over which to litigate. The amount which was owed by the insurance company for the annual premiums which were collected — but which should have been waived — during the period of disability — was a community asset because it is admitted that the amount was collected 'from the community. The amount which was owed by the insurance company for the monthly payments of $150 per month, which should have been paid regularly every month during the period of disability, likewise was of the nature of a community asset because the money was payable in lieu of or as compensation for the loss of the earning capacity of the insured, and if the payments had been made monthly during the period of disability they would have defrayed expenses which fell upon the community.
We deem it sufficient, however, to rest our decision, that the indebtedness which was due to the insured for disability benefits at the time of his death was a community asset, upon the process of elimination of the several classes of separate property enumerated in Article 2334 of the Civil Code.
The judgment is affirmed.