184 So.2d 70 (1966)
Succession of Wilhelmina JOHNSON, divorced wife by First Marriage of Booker T. BOLDS, and wife by Second Marriage of Daniel WILLIAMS.
No. 2064.
Court of Appeal of Louisiana, Fourth Circuit.
March 7, 1966.
*71 Jesse S. Guillot, New Orleans, for appellant.
Maurice L. Burk and Maurice R. Woulfe, New Orleans, for plaintiff-appellee.
Louis C. Philips, New Orleans, administrator pro tem.
Charles L. Rivet, New Orleans, curator ad hoc.
Felicien P. Lozes, New Orleans, for Louis C. Philips, administrator pro tem.
Before YARRUT, CHASEZ and HALL, JJ.
HALL, Judge.
The decedent, Wilhelmina Johnson, divorced wife by first marriage of Booker T. Bolds and wife by second marriage of Daniel Williams, died in the City of New Orleans on March 1, 1962. She was survived by James Bolds, only child of her first marriage, and by her second husband Daniel Williams. She had no children by her second marriage.
Decedent left a last will and testament in typewritten form (See LSA-R.S. 9:2442 et seq.) reading as follows:

"LAST WILL AND TESTAMENT OF WILHELMINA JOHNSON BOLDS

 New Orleans, Louisiana
 December 9, 1958
I, Wilhelmina Johnson Bolds, being of sound mind and knowing that life *72 is precarious do hereby make this my last will and testament, revoking all prior wills or codicils thereto.
At my death I desire that all of my property of whatever nature or kind be inherited by all of the descendents of James Bolds, sometimes called Booker. I hereby encumber this inheritance with a usufruct for life in favor of James Bolds, sometimes called Booker; and I also encumber this bequest to James Bolds' children with a right of habitation for life in favor of Isaac Anderson, who is the son of a niece of mine, both of whom I raised.
I hereby appoint James Bolds, sometimes called Booker, as testamentary executor of this estate and grant him full seizin and dispense with the furnishing of bond or any other security.
I hereby appoint Louis C. Philips as attorney for my executor and for my estate to handle the affairs thereof in their entirety.
(s) Wilhema (sic) J. Bolds 
WILHELMINA JOHNSON BOLDS"
The will was probated on March 29, 1962 and on May 15, 1963 her son, James Bolds, who was named as testamentary executor therein, filed a petition to annul it. After exceptions were filed challenging his right, while executor, to contest the will, he sought and obtained release from his duties as such and an Executor Pro Tempore was appointed in his stead. Thereafter Bolds in amended pleadings prayed that the will be declared a nullity on the grounds: (a) that the decedent was mentally incapable of making a will, and, (b) that she was unable to read or write (except to sign her name) and therefore in view of the provisions of LSA-R.S. 9:2443 lacked the capacity to make a typewritten will. In the alternative Bolds prayed that if the validity of the will be upheld he be declared to be entitled to his legitime.
At the outset of the trial on the merits, Bolds abandoned his charge that decedent was mentally incompetent, and restricted his proof to the charge that decedent could not read and therefore lacked capacity under the provisions of LSA-R.S. 9:2443 to make a typewritten will.
The Trial Judge found as a fact that decedent was able to read and write.
No good purpose would be served by reviewing the testimony in detail. Plaintiff produced a number of witnesses who had had close contact with the decedent and most of whom had lived with her at various times. Their testimony boils down to the proposition that none of them had ever seen decedent read or write. They testified that when any reading or writing had to be done they did it for her. Although one or two of the witnesses stated that decedent was unable to read or write it is plain from their testimony that this was a conclusion drawn from the fact they had never seen her do so. One of plaintiff's witnesses testified he knew the decedent could not read or write because she had told him so.
On the other hand the proponents of the will adduced the testimony of Mrs. William Ulmer who testified that deceased was employed by her for 30 years, and that one of deceased's duties was to answer the telephone and take messages whenever the witness was not at home. Mrs. Ulmer further testified that decedent could and did write down the telephone numbers correctly; that she, however, delivered all messages orally. The witness never saw her read but testified she was highly intelligent and had attended a "T. V. School" (of undisclosed nature or location).
Isaac Anderson, another witness for the proponents, who was given a right of habitation under the will, testified positively that decedent had read to him from the bible and helped him with his studies, reading to him from the "Winky Book" when he was a child.
*73 Although the case on the facts is a close one, when we take into consideration the obvious interest of some of the witnesses in the outcome of the case, we are unable to conclude that the factual finding of the Trial Court is manifestly erroneous.
One of plaintiff's contentions is that the Trial Court erred in the denial of his motion to reopen the case (after it had been submitted and while it was under advisement) in order to permit him to take the testimony of one Henry Johnson, on the ground that Henry Johnson, a witness to the will, was unavailable and could not be found at the time of the trial. Inasmuch as the record does not disclose that any effort had been made to produce this witness at the trial, and moreover shows from plaintiff's own testimony that either before or during the trial Henry Johnson had come to New Orleans from Detroit and had discussed the will with him, we find no abuse of discretion in the Court's refusal to reopen the case.
In holding the will valid in all respects, and dismissing plaintiff's suit, the Trial Court in effect denied plaintiff's alternative prayer that he be declared to be entitled to his legitime as the only child and forced heir of decedent.
As we have seen, decedent's entire estate was left to plaintiff's children (decedent's grandchildren) subject: (a) to a usufruct for life in favor of plaintiff, and, (b) to a right of habitation for life in favor of Isaac Anderson. Plaintiff contends that, as the sole child and forced heir of decedent, he is entitled to receive his legitime of one-third (1/3) of the estate together with a usufruct over the balance of the estate as awarded him in the will.
Proponents of the will contend that according to a calculation made by them and accepted by the Trial Judge,[1] the value of the usufruct bequeathed to plaintiff is far more than the value of his legitimate portion of 1/3, and therefore his legitime has been satisfied.
Article 1493 of the Revised Civil Code (LSA-C.C. Art. 1493) provides in part as follows:
"Art. 1493. Donations inter vivos or mortis causa can not exceed two-thirds of the property of the disposer, if he leaves at his decease, a legitimate child * * *." (Emphasis supplied)
which means that the child is entitled to one-third of the property of the disposer (not one-third of the value of such property) as a forced portion of which he cannot be deprived, and we know of no law which declares, or jurisprudence which holds, that the child's forced portion or legitime may be defeated, satisfied or reduced by the bequest to him of the usufruct of the estate, regardless of the value of the usufruct as compared to the value of the legitime.
Actually no true value can be placed upon a usufruct since its value depends upon the uncertainty of life. Moreover since a usufruct ceases to exist upon the death of the usufructuary while an heir's forced portion of an estate is transferable at death to his heirs, no comparison of their values is possible.
Proponents cite Succession of Ledbetter, 147 La. 771, 85 So. 908; Succession of Hunter, 159 La. 492, 105 So. 596; and Succession of Quinlan, 118 La. 602, 43 So. 249, but none of these cases is even remotely in point here.
We know of no reported case which discusses the precise point raised by proponents, but in Succession of Blossom, 194 La. 635, 194 So. 572, where the testatrix left the usufruct of her estate to her adopted daughter, Anne Baker, and left the naked ownership thereof to others, the Supreme Court held that the adopted daughter was entitled under the provisions of *74 Article 1493 of the Revised Civil Code to her legitime of one-third of the estate plus a usufruct on the remaining two-thirds. In McCalop v. Stewart et al., 11 La. Ann. 106, where a similar testamentary situation was presented, the Supreme Court reached the same result.
It is necessary here to notice a suit filed by one Daniel Williams to be recognized as a creditor of the Succession. Although this suit is entirely separate and distinct from plaintiff's suit to annul the will it has become involved in the procedural aspects of this appeal. The two suits were tried at the same time and resulted in two judgments being rendered by the Trial Court, one dated October 20th, 1964 recognizing Daniel Williams as a creditor of the estate in the sum of $695.08 and the other, dated November 23, 1964 which decreed the validity of the will. James Bolds appealed devolutively from both judgments. The Executor Pro Tempore did not appeal from either judgment but answered the Bolds' appeal praying that the judgment of November 23, 1964 decreeing the validity of the will be affirmed and that the judgment of October 20, 1964 in favor of Williams be reversed.
The record shows that while the Bolds' appeal was pending the Executor Pro Tempore voluntarily acquiesced in the Williams' judgment by listing the amount thereof in an account and by paying same with the approval of the Trial Court. Bolds has made no mention of the Williams suit in his brief or oral argument and has apparently abandoned his appeal from that judgment. No more need be said; the judgment in favor of Williams is final and has been paid.
James Bolds urges us to consider and reverse a judgment rendered by the Trial Court authorizing the Executor Pro Tempore to mortgage the real estate belonging to the Succession in order to pay certain debts. He contends that the Trial Court was without jurisdiction to render such a judgment while this appeal was pending. The judgment complained of was rendered on January 20, 1965 and since no appeal has been taken therefrom and no application for writs has been filed we are without authority to review it.
In conclusion we are of the opinion that James Bolds is entitled by law to his legitime of one-third of the estate in full ownership plus a usufruct for life over the remaining two-thirds, and that his children are entitled to the said remaining two-thirds in naked ownership. The right of habitation bequeathed to Isaac Anderson must fall because Bolds' legitime cannot be subjected to a right of habitation (See LSA-C.C. Art. 1710; Clarkson v. Clarkson, 13 La.Ann. 422) and a right of habitation cannot exist in two-thirds of a house.
For the foregoing reasons the judgment dated November 23, 1964 herein appealed from is amended by providing that James Bolds be decreed to be entitled to one-third (1/3) of decedent's estate in full ownership together with a usufruct during his life over the remaining two-thirds (2/3), and that "all of the descendants of James Bolds" be decreed to be entitled to the ownership of the said remaining two-thirds (2/3) of the estate, subject however to the usufruct in favor of James Bolds. As so amended, and in all other respects said judgment is affirmed; and the mortuary proceedings are remanded to the District Court for further proceedings according to law consistent with the views herein expressed. Costs of this appeal are to be borne by the Succession.
Amended and affirmed.
NOTES
[1] This calculation is not in evidence but was contained in a letter addressed to the Trial Judge by proponents while the case was under advisement.