THOMPSON, J.
Joseph King died in 1898, leaving a last will and testament, the provisions of which, pertinent to this controversy, are:
(4) “I will and bequeath to my grandchildren, Bessie Vinson and Clyde Kemp, lot (2); provided that my daughter, Minnie Evans, receive all rents, benefits and emoluments therefrom during her natural life.”
(5) “I will and bequeath to my grandchildren, Bessie Vinson and Clyde Kemp, lot (3); provided that my daughter Elizabeth Young, receive all the benefits, rents and emoluments therefrom during her natural life.”
(6) “I will and bequeath to my grandchildren Bessie Vjnson and Clyde Kemp, lot (4); provided that my son Charles W. King, receive all the benefits, rents and emoluments therefrom during his natural life.”
*22 (7) “It is my will that what is known as the Cypress Brake be held jointly by 'my son, Charles W. King, my daughter Minnie Evans and my granddaughter Bessie Vinson, for the purpose of keeping their places in repair, and in case any of these legatees sell his of her interest in this brake then his or her interest in the brake is not to follow such sale, but reverts to the other holders of it.”
(8) “I will and bequeath to my son, Charles W. King, all notes and judgments and accounts that I may hold against him.”
(9) “I will and bequeath to my son Joseph H. King, * * * the sum of $800.”
(10) “It is my will that all other property I may have, be disposed of, and after payment of my debts, be equally cjivided between my son Charles W. King and my daughter, Elizabeth Young and my daughter Minnie Evans.”
“I appoint E. W. Foster and C. W. Elam the executors of my will.”
The will was admitted to probate and ordered carried into execution by the executors named. All of the personal property was sold, the debts and money legacies discharged, and the balance of the profceeds was distributed as provided in the tenth .clause of the will as above quoted. The land was turned over to the legatees as provided in the will, and the executors discharged by judgment of the court.
There were four children who survived their father, to wit: Joseph H. King, Minnie King Evans, Elizabeth King ’ Young, and Charles W. King. They were all duly notified of the time and place of the probate of the will. One of the heirs, Mrs. Minnie fifing Evans, died without issue, and her interest in the estate descended to the other three heirs.
This suit is brought by Charles W: King against the other heirs and legatees to annul the will and to set aside the probate proceedings thereunder. The principal attack is directed at paragraphs 4, 5, 6, and 7 of the will as we have numbered them, as containing a prohibited substitution fidei commissum.
It is further alleged, however, that the pretended partition by the will purported to secure an advantage to one of the coheirs exceeding the disposable portion.
The prayer of the petition is that the will and all probate proceedings thereunder be declared null and void, and that plaintiff be decreed the owner of one-third of all the property of the estate, and, in the alternative, that he be decreed the owner of lot 4, which was bequeathed to the grandchild of the deceased, the revenues to go to Charles W. King.
The defense is an affirmance of the validity of the will, a plea of estoppel based on an express ratification by acceptance of the legacies under the will, and by acquiescence and silence for more than 20 years.
There was judgment rejecting the plaintiff’s demand, and he has appealed.
The proposition is not disputed that a testator may give the naked ownership of property to one person and the usufruct to another. C. C. art. 1522. Succession of Baker, 10 La. Ann. 28; Succession of Law, 31 La. Ann. 456; Succession of Shaffer, 50 La. Ann. 610, 23 South. 739. That is precisely, what was done by the testator in his will in this ease. There can be no mistake that the naked ownership was given to the various parties named in the bequests and the provisos, that the other parties named should “receive all the rents, benefits and emoluments therefrom,” during the natural life of such parties, created a usufruct on the property in favor of such persons, and is not a fidei commissum or prohibited substitution. The absolute ownership of the property was vested in the one and the absolute usufruct was vested in this other.
The right of usufruct may be established by will (C. C. art. 540), and all kinds of fruits, natural, cultivated, or civil, produced during the existence of the usufruct by the things subject to it, belong to the usufructuary. C. C. arts. 544, 545. The language used by the Testator follows substantially the definition of usufruct as given in the Code.
The case of Succession of Ledbetter, 147 La. 771, 85 South. 908, cited by counsel, has *24 no application. In that case the testator provided that his son should have—
“ * * * the half of the remaining part of my estate or the half of the revenues therefrom during his lifetime, but should he die without an heir or child, I wish his part of my estate to be paid or go to my present grandchildren.”
The court held that the provision thus quoted did not confer the naked ownership on one person and the usufruct on another, but was the giving of the property to one person during his life and at his death to go to another, and hence the devise was invalid. The mere reading of the. opinion will show its total inapplicability to the provisions of the will here in contest.
The plaintiff alleges that the will purported to secure an advantage to one of the coheirs exceeding the disposable portion. There is no demand, however, for reduction, and the record fails to show that the légitime of any of the heirs, was in any way prejudiced.
We are impressed from a careful study of the record that if any one of the heirs Obtained an advantage over others under the terms of the will it was the plaintiff. But be that as it may, the plaintiff is without legal or moral right at this late date to challenge the validity of a will, probated and carried into execution more than 20 years before the filing of this suit and which has been ratified and acquiesced in by all of the heirs and legatees therein, including the plaintiff himself. The record shows that the plaintiff and the other heirs accepted service of the petition to probate the will, and made no protest against the same or any of its provisions; that the plaintiff and the other heirs consented to the homologation of the final account of the executors and their discharge, and that the plaintiff received his one-third of thenet proceeds of the sale of the movable property as distributed on said final account.
When Mrs. Minnie Evans, one of the coheirs, died without issue, the plaintiff and the other two heirs were by judgment of the court sent into possession of all the property belonging to her estate, including, specially and particularly, that part of her estate given her in her father’s will.
The will gave to plaintiff certain notes, accounts, and judgments which his father held against him, and on November 16, 1898, shortly after the will was probated, the plaintiff wrote the clerk of the court to cancel a judgment which his father held against him. In this letter he expressly accepted the benefit of the will by which all debts due by him to his father were remitted. He disposed of all of .the property béqueathed to him by the will. He joined with his coheirs in an oil lease to the Gulf Refining Company of the third interest in the Cypress Brake bequeathed to him by the will. He exchanged an undivided one-eleventh of his interest in the Brake with Mrs. Hollingsworth, and later sold all of his interest in said Brake to W. R. Hollingsworth, reserving only one-half of the minerals. In 1918 he joined in a partition of the mineral rights in the King Brake under which he received in full ownership the mineral rights under 17 acres of said Brake. And in 1920 he sold one-half interest in the minerals under said 17 acres to other parties. In September, 1918, in an -"authentic act, he joined the devisee under the will in an oil and gas lease of lot 4 to W. M. Pollock. In this lease he expressly declared that the devisee was the naked owner of said lot, and that he (the plaintiff) was the usufructuary under the will of his father.
After the long lapse of time, after all of these proceedings, and in the face of the solemn acts and the judicial proceedings to which the plaintiff was a party, he cannot be heard now to assail the validity of the will, and especially is this true since he does not offer to return to the estate or the other heirs the benefits he has received, nor to revive the *26 debts due the estate which he caused to be canceled under the terms of the will.
As we have seen, a large part of the property received by the plaintiff and the other heirs under the will has passed beyond their reach into the hands of third parties. It would therefore be impossible to restore the situation as it existed, before the will was carried into execution.
In Heirs of Barrow v. Barrow, 38 A. 648, one of the grounds of attack on the will was that clauses 4 and 5 of the will were null as containing prohibited substitutions and fidei commissa. It appeared that the estate was administered under the will; the executor filed his account, which was duly homologated ; and all of Khe heirs received their legacies and the distributive shares coming to them under the account. The court held that, after such proceedings, the heirs cannot be heard 8 years afterwards to attack the validity of the will and the settlement of the executor. See, also, Heirs of Deslondes v. City of New Orleans, 14 La. Ann. 552; Succession of McCloskey, 29 La. Ann. 406; Johnson v. Johnson, 26 La. Ann. 570; Chambers v. Chambers, 41 La. 443, 6 South. 659.
For the reasons assigned, the Judgment appealed from is affirmed, at the cost of appellant.
Rehearing refused by Division B, composed of DAWKINS, LAND, and LECHE, JJ.