YELVERTON, Judge,
dissenting.
The language of the counter letter clearly established in Adkins a conventional usu-fruct over Gahagan’s half-interest. Precise, technical terms are not necessary to create a usufruct. In Haggard v. Rushing, 76 So.2d 52 (La.App. 2nd Cir.1954) it was held that a quitclaim deed which granted defendant the right “to use, without cost, the surface of the south 840 feet” of plaintiff’s property created a usufruct. And in Creech v. Errington, 207 La. 615, 21 So.2d 761 (La.1945) a provision that the donor of property should “have and control said property during his lifetime, collecting and disbursing all income ... as may seem just and right to him” was the reservation of a usufruct. Also, according to King v. King, 155 La. 19, 98 So. 742 (La.1923), a provision that a named beneficiary should “receive all the rents, benefits and emoluments” of property was intended to create a testamentary usufruct. In the instant case the counter letter provided that Adkins “is to be sole operator of the business, and is to receive whatever net profits may accrue after all mortgage payments and other expenses are paid from the income of the business” and that “Gahagan shall own an undivided one-half interest in the property itself, but shall have no interest in the operation of the business or in the net profits accruing therefrom.” This language created a usufruct limited in duration only by the provisions of La.Civil Code art. 607.
The majority finds ambiguity in the duration of the agreement in the language that Adkins was to receive the net profits after mortgage payments were made, reasoning that there is an uncertainty as to whether this refers to the monthly payment of the mortgage note or complete discharge of the mortgages. In finding that the language “after all mortgage payments” is ambiguous in that manner the majority fails to consider the rest of the adverbial clause in which that language is found. The clause in its entirety says: “After all mortgage payments and other expenses are paid.” The majority also apparently overlooks the next paragraph of the agreement which repeats the grant of a usufruct even more emphatically, and without mention of mortgage payments and other expenses at all, in the language: “Marvin F. Gahagan shall own an undivided one-half interest in the property itself, but shall have no interest in the operation of the business or in the net profits accruing therefrom.” This paragraph is incapable of interpretation that it establishes an agreement limited by a term or a condition.
There is nothing ambiguous about this counter letter. We may question the business judgment of its author, or wonder at his liberality, but I can find no lack of clarity in his language. I do not doubt for a moment the genuineness of Gahagan’s present belief that he should be getting some economic benefit, or that 20 years ago it was in his mind that one day he would. But Adkins testified that was not in his mind 20 years ago, and it was certainly not written down in the counter letter. There *218 has been no modification of the agreement, oral or written, since the counter letter was executed in 1961.
Even if we consider the document ambiguous as to its duration there are bridges that have to be crossed before we can resolve the issue simply as a credibility evaluation by the district court regarding intent. Gahagan, an attorney, prepared the counter letter and if there is anything ambiguous about it, the interpretation should go against him. La.Civil Code arts. 1957 and 1958.
The strongest evidence, however, of the intent of the parties (if we must consider it ambiguous) is the construction put upon the agreement by the manner in which it has been executed. La.Civil Code art. 1956. There were two mortgages on the property in 1961 when the counter letter was signed. They were discharged two years later on September 3, 1963. The majority believes the agreement in the counter letter was intended to continue in effect only until the mortgages on the property were discharged. If that was so, why did not Gahagan approach Adkins when the mortgages were discharged in 1963 in order to make a new agreement? The majority excuses this inaction because another mortgage was put on the property in 1965 or 1966 to finance the cost of repair of fire damage and that mortgage was not paid until 1979. But that does not explain Gahagan’s inaction for the two or three years that elapsed between discharge of the original mortgages and the fire of 1965 or 1966. The only logical explanation of Gahagan’s inaction for that two or three year period is that the parties had no intention that the discharge of the mortgages would have any effect on the duration of the agreement.
Although the other mortgages were put in evidence the later mortgage given in connection with the fire damage was not put in evidence. We know almost nothing about it: we do not know the year it was granted, the amount of the indebtedness it secured, the amount of the monthly payments, the property it covered, whether it financed total reconstruction or only limited repairs, or whether or not its purpose might have extended to other business pursuits of the mortgagor besides Bill’s Esso Station. What we do know is that the parties could not have anticipated the fire, therefore this mortgage was not contemplated when the counter letter was signed. There has been no modification of the agreement since it was made in 1961. All mortgages in effect in 1961 were cancelled no later than September 3, 1963. On that date Gahagan, for an investment of only $3,500, had naked ownership of a half interest in a mortgage-free business worth then at least the purchase price of $59,000 and now, according to the testimony, worth $250,000. Sixteen years after the agreement supposedly terminated according to the majority’s construction of it, Gahagan approached Adkins for the first time “in order to reach a new agreement.” In my opinion inaction for these 16 years, at least two and perhaps more years during which there were no mortgages on the property, convincingly establishes, in the light of the language of the counter letter and all the other evidence, that this was a usufruct that was not limited by a term or a condition.
For these reasons I dissent. I am of the opinion that Gahagan owned only the naked ownership of an undivided one-half interest. Since the property cannot be partitioned in kind and under these circumstances partition by licitation is not allowed (see La.Civil Code art. 543), I would reverse the trial court’s judgment ordering a partition by licitation and render a judgment in favor of Adkins dismissing the suit.